BANK OF NEVADA and DIANE CRANDALL COULTHARD, Coexecutors of the Estate of George William Coulthard, deceased, Appellants, v. KAREN J. SPEIRS and FIRST NATIONAL BANK OF NEVADA, successor Trustee for Karen J. Speirs, Respondents.

No. 10473

FIRST NATIONAL BANK OF NEVADA, successor Trustee for Karen J. Speirs, Appellant, v. BANK OF NEVADA and DIANE CRANDALL COULTHARD, Coexecutors of the Estate of George William Coulthard, deceased, Respondents.

No. 10474

December 13, 1979 · 603 P.2d 1074

*John Peter Lee, Ltd.* and *James C. Mahan,* of Las Vegas, for Bank of Nevada and Diane Crandall Coulthard.

*Weiner, Goldwater & Waldman, Ltd.,* and *Gerald M. Gordon,* of Las Vegas, for Karen J. Speirs and First National Bank of Nevada.

## OPINION

By the Court, THOMPSON, J.:

These consolidated appeals are taken from a judgment imposing a constructive trust for the benefit of Karen J. Speirs upon a 12.5-percent interest in real property known as the Horseshoe Club Hotel and Casino in Las Vegas and, as well, money damages. The district court determined that George William Coulthard during his lifetime had acted improperly in discharging his responsibilities as trustee for his daughter, Karen J. Speirs, and impressed a constructive trust upon the mentioned interest in the Horseshoe Club which Coulthard had .

acquired in his own name and which the coexcutors of his estate, the Bank of Nevada and Diane Crandall Coulthard now hold. The coexecutors have appealed from that determination. Karen J. Speirs and the First National Bank also have noticed an appeal from a portion of the judgment concerning money damages. We turn first to recite relevant facts.

At one time, Lena Silvagni Coulthard was the wife of George William Coulthard. Karen J. Speirs was their daughter. Lena's last will bequeathed one half of her stock in Silvagni Estate Co. which owned the Horseshoe building and land to G. William Coulthard, and the other one half to G. William Coulthard in trust for Karen. Lena died July 15, 1955. G. William Coulthard was appointed executor of her estate. An order was entered in the estate proceeding distributing a certificate for 12,500 shares of Silvagni Estate Co., 6.25 percent of the stock of that corporation, to G. William Coulthard individually, and a like amount to him as trustee for Karen J. Speirs (then Karen J. Coulthard).

The trust instrument directed Coulthard as trustee to use the corpus of the trust for the care, education, welfare and maintenance of Karen, and at his discretion to use both the income and corpus for such purposes. The trustee was empowered "to buy, sell and invest with regard to the corpus of this trust, in whatever manner seems to him to be best, and I specifically provide that he may invest the same in whatever property or properties, real or personal, stocks, bonds, or evidences of indebtedness, at his choosing." The trust was to terminate when Karen became twenty-five years old.

The Silvagni Estate Co. owned in fee simple the land referred to as the Horseshoe Properties. After Lena's death the stockholders of that company were Michael Silvagni, Victor Silvagni, Olga Silvagni, G. William Coulthard, and G. William Coulthard as trustee for Karen. In April 1961 those stockholders entered into an agreement to dissolve the corporation and distribute the Horseshoe Properties to themselves as tenants in common in the proportion that their stockholdings bore to the total stock issued. Pursuant to that agreement Coulthard individually received a 6.25-percent undivided interest in the Horseshoe Properties and a 6.25-percent undivided interest as trustee for Karen. The agreement also contained a right of first refusal which required the party desiring to sell to "first offer his or her interest to the remaining parties to this agreement at no greater a price or more stringent terms than he or she is offered by a bona fide buyer not a party to this agreement."

In 1962, 1965 and 1967, Coulthard purchased for himself additional interests in the Horseshoe Properties. The 1962 purchase was for a 12.5-percent interest from Michael Silvagni for

$250,000. The 1965 purchase was for a 7.5-percent interest from Michael Silvagni for $375,999, and the 1967 purchase was for a 5-percent interest from Victor Silvagni for $165,000. These purchases were financed through loans from the Bank of Las Vegas.

It is the contention of Karen Speirs and of First National Bank, the successor trustee for Karen, that Coulthard should have purchased one half (12.5 percent) of such additional interests in the Horsehoe Properties for the trust. The district court agreed.

Coulthard purchased five Iowa farms for the trust, one in 1961, one in 1965 and three in 1968. The acquisition price was approximately $243,146. Coulthard died on July 25, 1972. After his death, but prior to termination of the trust, Karen sold the farms for a substantially higher sum. These sales occurred in 1974. Karen and the First National Bank contend that the acquisition of Iowa farmland was an improvident investment. The district court also agreed with this contention. For reasons hereafter expressed we reverse the judgment below, since, in our view, G. William Coulthard did not breach his duty as the testamentary trustee of the trust established for Karen.

1. A testamentary trustee is a fiduciary who must act in good faith and with fidelity to the beneficiary of the trust. He should not place himself in a position where it would be for his own benefit to violate his duty to the beneficiary.

We are here concerned with a family arrangement. In establishing the testamentary trust for the benefit of Karen, Lena Silvagni Coulthard invested G. William Coulthard, her husband and Karen's father, with complete discretion as to investing the trust corpus. She specifically provided that ''he may invest the same in whatever property or properties, real or personal, stocks, bonds, or evidences of indebtedness, at his choosing.'' This broad grant of authority, this testamentary exoneration of the trustee for mistakes, if any, must be accorded respect by a court. This would seem especially true in a family setting where it is apparent that the wife-mother wanted the husband-father to have absolute control of the trust established for the benefit of their daughter, knowing that he would act with love and care.

Wholly apart from the testamentary forgiveness of trustee liability for investments, we perceive no wrongdoing by G. William Coulthard in the discharge of his duties as trustee. Before

himself borrowing money to acquire additional interests in the Horseshoe Properties he asked an investment expert whether he should purchase such additional interests for the trust, and was advised not to do so. The major asset of the trust was the Horseshoe Properties interest. The expert advised him to diversify the trust investments rather than to risk having the value of the trust corpus depend upon the strength of the gaming economy in Nevada which, during the years in question, was in a state of fluctuation. Moreover, the trust would have to borrow substantial sums of money if it were to acquire such additional interests in the Horseshoe Properties, and the expert strongly advised against such a course of action. In these circumstances we do not fault Coulthard for declining to purchase for the trust.

This aside, it is the position of Karen and the First National Bank that once Coulthard decided to purchase additional interests in the Horseshoe Properties for himself, he was legally obliged to purchase one half thereof for the trust, notwithstanding expert advice that it was a poor investment for the trust. We are not at all persuaded by this contention, and find no case supporting it in a similar factual context.

The rule that a fiduciary owes a primary duty to protect his trust was not violated by Coulthard. It is not per se improper to disturb the equal interests of the trust and the trustee. Anderson v. Bean, 172 N.E. 647 (Mass. 1930). There, the court observed that the disturbance of the equal balance of holdings of stock by the trust and by the trustee as an individual is not, as a matter of law, apart from other circumstances, an unconscionable advantage or disadvantage.

The other circumstances here present do not suggest any impropriety on the part of Coulthard. He was advised against purchasing the additional interests for the trust and followed that advice. No loss was occasioned to the beneficiary, Karen, by Coulthard's individual acquisition of a greater interest in the Horseshoe Properties. Indeed, by his last will, Karen and Coulthard's children by his second marriage to Diane Crandall Coulthard inherit equal portions of his property including the additional Horseshoe interests. The fortuitous circumstance that the Horseshoe Properties have substantially increased in value has inured to Karen's benefit as well as to the benefit of other heirs.

As we see it, the fault with the decision below is its acceptance of the proposition that it is per se improper to disturb the equal interests of the trust and the trustee. The court did not find that Coulthard had acted in bad faith or fraudulently.

Rather, it found, in substance, that had he acquired one half of the additional Horseshoe Properties for the trust, Karen would have benefited. This finding necessarily rests upon hindsight, and gives no credence whatsoever to the expert advice which Coulthard, in good faith, sought and followed. Neither does it properly acknowledge the complete discretion granted him with regard to trust investments.

Finally, we note that the testatrix, Lena Silvagni Coulthard, created the possibility of a conflict between the trust and the trustee by her last will distributing equal interests in the Horseshoe Properties to them. In these circumstances, an absolute limitation against self-dealing on the part of the trustee is modified, and the trustee will not be penalized when he has acted in good faith and in a manner he believes was for the best interest of the trust. In re Steele's Estate, 103 A.2d 409 (Pa. 1954).

2. The purchases of the Iowa farms for the trust also were within the broad investment authority given Coulthard by the trust instrument. This precludes any liability on the part of his estate.

3. The appeal by Karen and the First National Bank is in regard to the manner in which the district court computed damages due them. Since the ruling as to damages rests upon the premise that Coulthard acted improperly in discharging his duties as trustee for Karen, and since we have determined that ruling to be improper, it is apparent that there can be no damage award in any amount.

4. Other assigned errors have been considered and are without merit.

The judgment below in favor of Karen J. Speirs and First National Bank of Nevada is reversed, and the cause is remanded with direction to enter judgment in favor of Bank of Nevada and Diane Crandall Coulthard.

MOWBRAY, C. J., and MANOUKIAN and BATJER, JJ., concur.

GUNDERSON, J., dissenting:

I respectfully disagree with the majority opinion insofar as it declares the trustee free to take trust instrument advantages entirely for himself.