MARJORIE R. RILEY; MICHAEL RILEY, INDIVIDUALLY AND AS GUARDIAN AD LITEM OF HIS MINOR CHILD, DYLAN MICHAEL RILEY; JUDITH RILEY HYLTON, INDIVIDUALLY AND AS GUARDIAN AD LITEM OF HER MINOR CHILD, JUSTINE HALLIDAY HYLTON, APPELLANTS AND CROSS-RESPONDENTS, v. LEON ROCKWELL, JR.; MARGARET ROCKWELL; AND ROCKWELL FAMILY LIMITED PARTNERSHIP, A LIMITED PARTNERSHIP, RESPONDENTS AND CROSS-APPELLANTS, AND BANK OF NEVADA, A BANK ASSOCIATION ORGANIZED UNDER THE LAWS OF THE STATE OF NEVADA; FIRST NATIONAL BANK OF NEVADA, A BANKING ASSOCIATION ORGANIZED UNDER THE LAWS OF THE UNITED STATES, AND BY CONSOLIDATION WITH BANK OF NEVADA, A BANKING ASSOCIATION ORGANIZED UNDER THE LAWS OF THE UNITED STATES, RESPONDENTS.

No. 16305

December 31, 1987                    747 P.2d 903

[Rehearing denied April 12, 1988]

*Beckley, Singleton, DeLanoy, Jemison & List, Frances A. Forsman,* Las Vegas, and *Holmes, De Franco & Schulte, Gile R. Downes,* Portland, Oregon, for Appellants and Cross-Respondents.

*John Peter Lee,* Las Vegas, for Respondents and Cross-Appellants.

*Jolley, Urga, Wirth & Woodbury, R. Gardner Jolley, Jay Earl Smith,* Las Vegas, for Respondents.

## OPINION

By the Court, STEFFEN, J.:

This is an appeal from the decision of the district court, finding that respondent Leon Rockwell, Jr. (Leon, Jr.) breached numerous fiduciary duties to appellant Marjorie Riley (Marjorie) in the acquisition of an option to a one-half interest in property located in Las Vegas, Nevada. The court imposed a constructive trust in appellants' behalf. For the reasons stated below, we affirm in part, reverse in part, and remand to the district court.

The property here at issue is subject to long-term leases and occupied by hotels. Thus, at present it serves its owners only as a source of income. Through transactions which have not been called into question in this action, ownership of the property (and, with it, the right to receive the rental income) was divided. Richard Earl Rockwell (Earl) owned a one-half interest; in 1963, he placed it in a revocable *inter vivos* trust, retaining the power to modify that trust. Another one-quarter interest was placed in a separate trust in 1964, paying the income to Leon, Jr. and Marjorie for their lives, with the corpus then to be distributed to their children. The final one-fourth was also in trust for the benefit of Leon, Jr. and Marjorie; however, in 1972 the trust terminated and each received an undivided one-eighth interest. Each trust had two trustees: Leon, Jr. and one of the respondent banks.[1]

The seeds of the present dispute were sown soon after the death of Earl's wife, Ida. Earl was then elderly and did not expect to

---

[1]The banks have merged by consolidation and are now known as First Interstate Bank of Nevada.

live many more years. Contemplating remarriage, he desired to assure that his one-half interest would remain in the family. After consulting his attorney, Earl concluded that he should grant an option to purchase his interest; he offered that option to Leon, Jr.[2] The option agreement was executed December 6, 1966, and recorded two days later; by its terms it could be exercised only within ninety days after Earl's death, and could not be assigned out of the family of Leon, Jr.[3]

In 1972, Earl sought to cancel the option but Leon, Jr. refused. Litigation ensued, but was dropped in 1977. Thereafter Earl sent a letter ratifying the option and instructing the trustee bank to honor it. Earl died in 1980, and Leon, Jr. exercised the option. Marjorie and members of her family filed suit in May, 1981, alleging a fraudulent breach of fiduciary duties and seeking imposition of a constructive trust on the optioned property.[4] The judgment in question, and this appeal, followed.

The fiduciary obligations of a trustee are great. A trustee should do everything in his power to avoid a conflict of interest. Bank of Nevada v. Speirs, 95 Nev. 870, 603 P.2d 1074 (1979). The district court stated that two types of relationships created the fiduciary obligations of Leon, Jr. The first type of relationship identified is the role Leon, Jr. played as express trustee. The second type of relationship assertedly arose from the different business relationships Leon, Jr. and Marjorie had developed.

An analysis of Leon, Jr.'s role as trustee shows that he did not breach any duty to Marjorie. Part of Leon, Jr.'s duty as defined by the district court was not to compete with "the trusts in the acquisition of property or other assets related to or closely connected with property" they held, "or which was reasonably related to the area of interest or expectation" of the trusts. This is a correct statement of the law, but the district court erred in applying a form of the corporate opportunity doctrine to its conclusion that the property was "of great, unique and substantial value, and [was] closely and inseparably related to interests already held by" appellants and the trusts. In most cases, it is a

---

[2]Although Leon, Jr. had "needled" his father and Earl to create trusts in 1963, the record does not indicate that he took any active part in instigating the plan to grant an option, or that he sought the offer.

[3]The purchase price was set at $300,000; the property had been appraised at $264,500 in 1964.

[4]Marjorie also sought compensatory and punitive damages and other relief.

breach of a trustee's fiduciary duty for the trustee to become a co-owner with the trust. This is because when the trustee and the trust become co-owners, there is a greater tendency for self-dealing on the part of the trustee. Bogert recognized the potential problems in the type of situation here present:

> If the fiduciary holds for his beneficiary merely a fractional interest in certain property, is it a breach of his duty to buy for himself another fractional interest in the same res? If, for example, as trustee he holds a one-fourth interest in an apartment house and the remaining three-fourths interest is for sale, may the trustee buy it for himself without running the risk of his interest being taken by the beneficiary on a constructive trust theory? *It would seem that his transaction ought to be discouraged, although not so obviously a breach of duty as the purchase of some other competing interests,* unless the trust clearly lacks the funds to make the purchase. If the trustee makes himself a co-owner with the trust, he automatically gives room for possible conflict and dispute.

9 G. Bogert, *Trusts & Trustees* § 543(d) (rev. 2d ed. 1978) (emphasis added).

However, the case before us is unique. When Leon, Jr. purchased the option, he was already a designated future co-owner with the trust.[5] Therefore, the potential for a conflict of interest was inevitable in any event. Moreover, the property is not susceptible to manipulation by any of its owners since it is involved in long-term leases under hotels in Las Vegas and serves only as a source of income. A greater share in the property creates only a greater share in the income. Therefore, Bogert's reasons for discouraging this type of transaction do not apply. Thus, this case is analogous to *Speirs,* where we allowed a trustee to purchase an additional interest in property in which he and the trust already held interests. Since the corpus of the trusts has not been impaired, there is no evidence that Leon, Jr. breached any fiduciary duty arising out of his position as trustee.

The district court also found that Leon, Jr. had acted as Marjorie's fiduciary in the capacity of co-owner, business and property manager, advisor, partner, agent, joint venturer, brother, and confidant with respect to Marjorie's interests in all of the Rockwell family properties, and as executor of Leon, Sr.'s

---

[5]Leon, Jr. purchased the option in 1966. His mother, Bessie, had passed away in 1962. She left one-eighth interest in the property to each of her children and under the terms of her trust, the distribution was to be made ten years after her death, in 1972. Leon, Jr., as trustee of Bessie's trust, knew its terms.

estate. The court went on to state that due to these fiduciary relationships, Leon, Jr. had an obligation to: (1) make a full and fair disclosure of all facts which might materially affect Marjorie's right and interest and which Marjorie might reasonably need to know to protect and enhance her interests; (2) disclose and offer to appellants the chance to take advantage of any opportunities related to, beneficial to, or in the area of interest of the expectation of appellants; (3) avoid any conflict between his own interests and those of appellants and, in the event of such conflict, place the interests of appellants before his own; and (4) avoid competing with appellants in the acquisition of property or other assets related to or closely connected with property held by appellants, or reasonably related to their area of interest or expectation. The district court then went on to state that Leon, Jr. breached each and all of those fiduciary duties. We disagree.

The district court names nine different business relationships that existed between Leon, Jr. and Marjorie that created a fiduciary duty. It is true that each of these relationships would serve as a basis for certain duties between the parties. However, those duties generally relate to properties currently held within the relationship or anticipated by the relationship. The property in question was never involved in the relationships identified by the district court. Moreover, Earl was the sole owner of the property subject to the option and had the right to dispose of it according to his own desires. That property was never within the contemplation of the relationships listed by the district court. Additionally, both the Rileys and the Rockwells admit that they were involved in independent investments. A business relationship between two people does not, without more, preclude separate investments outside the relationship. In Desantis v. Dixon, 236 P.2d 38 (Ariz. 1951), the Arizona Supreme Court recognized that where one of two partners purchases a vacant lot in his own name and then leases it to the partnership, the "partner who buys a vacant lot is not a constructive trustee merely by virtue of the partnership relation." *Id.* at 41-42. Moreover, although Leon, Jr. acted as Marjorie's advisor with regard to certain properties, she did not consult him on all her property investments. The record is clear that Marjorie relied, to a great extent, on the advice and counsel of her attorney.

The relationships between Leon, Jr. and Marjorie were, in part, products of convenience. Marjorie lived in Oregon and Leon, Jr. lived close to the property in question. The fact that Leon, Jr. was willing to assist Marjorie in the management of the property does not create an interest on her part in all his dealings. The district court creates very broad duties that Leon, Jr. must live up to—duties that we conclude are unrealistic.

The first duty addressed by the district court, that of loyalty, was not breached. The record indicates that, although Marjorie claims she did not know of the option, she and her attorney had sufficient facts to put them on notice not only of the existence of the option, but also its terms, at least by 1973. We also conclude that appellants were not diligent in discovery of facts relating to the existence of the option. Indeed, on that basis alone, we could hold that Marjorie's action, which was not filed until 1981, was time-barred.

The second duty imposed on Leon, Jr. by the district court was to disclose and offer to appellants and the trusts the chance to take advantage of the option. This is unsupportable. The option was offered only to Leon, Jr.; he had neither the duty nor the right to expand the terms of Earl's offer.

The next duty discussed by the district court is to avoid conflicts between Leon, Jr.'s own interests and those of appellants and the trusts. This is a fair statement of the law. However, we perceive no conflict between Leon, Jr.'s role as fiduciary and his receiving the option.

The district court also states that Leon, Jr. personally competed with, profited from and enhanced his own interests to the detriment and at the expense of the interests of appellants and the trusts. We disagree. There is no showing that the trusts or the appellants were injured in any way. The assets of the trusts have been maintained and their value has not been diminished.

Appellants contend that the trusts granted the trustees substantial power and authority to invest in opportunities such as the option in question. The district court agreed that this power existed, but faulted only Leon, Jr. for failing to offer the option to the trusts. However, respondent Bank also knew of the option due to its role as sole trustee over Earl's trust, and in order for the trusts to have purchased the option, both Leon, Jr. and the Bank would have had to have been involved.

The district court also determined that the statute of limitations was tolled and did not commence to run, as to the infant plaintiffs, Justine Halliday Hylton and Dylan Michael Riley, prior to the commencement of this action. We conclude, however, that Justine Halliday Hylton and Dylan Michael Riley are not proper parties to this action; as mere incidental beneficiaries of the trust, they lack standing absent the death of their respective parents. On

remand, we direct the district court to dismiss this action as to Justine Halliday Hylton and Dylan Michael Riley.

Additionally, retention of the property covered by the option would not unjustly enrich respondents Rockwell. The district court found that "Leon, Jr., as nephew of Earl, was one of the natural objects of Earl's bounty and as such, the Bank was not put on notice of any improprieties motivating Earl to amend the trust." The record does not sustain the allegation of improprieties referred to by the district court. The district court also found that "Earl Rockwell retained complete, unfettered control of the trust assets of Trust 600." In the exercise of that control he elected to offer Leon, Jr. the opportunity afforded by the option. While it may have been selfish and morally wrong not to at least ultimately provide a basis for Marjorie to share in the ownership of the optioned property, such considerations do not provide a legal foundation for relief.

We conclude that appellants have no legal access to any of the property covered by the option. That portion of the judgment creating a constructive trust on behalf of appellants is vacated. Appellants were not injured and are not entitled to damages. The district court also erred in removing Leon, Jr. as trustee of all trusts of which appellants are beneficiaries and we vacate that portion of the judgment. We perceive no error in relation to the findings that pertain to the Bank and we affirm those portions of the judgment. Additionally, respondents Rockwell and Bank are entitled to recover their costs of suit against appellants. Finally, upon remand, we direct the district court to enter judgment consistent with this opinion.[6]

YOUNG and MOWBRAY, JJ., concur.

SPRINGER, J., with whom GUNDERSON, C. J., agrees, dissenting:

I would affirm the trial court's judgment as it stands except that I would remand so that the trial court could make a definitive ruling on the issue of punitive damages.

The trial court found, as a matter of law, that respondent Leon Rockwell, Jr., was guilty of breach of trust and fraud against the appellants. Under NRS 42.010 punitive damages could have been awarded. The question of whether punitive damages should be awarded is left solely to the discretion of the fact finder, Midwest Supply, Inc. v. Waters, 89 Nev. 210, 213, 510 P.2d 876, 879 (1973); however, as pointed out by appellants, the trial court did not in its decision, findings, or judgment address or rule on this

---

[6]Due to the disposition of this appeal, we conclude that it is unnecessary to consider appellants' assignments of error.

question. Although it might be assumed that the trial judge's failure to address this question means that he intended to deny punitive damages, I still think that the appellants are entitled to a yea or nay on this question and would remand for this purpose.

I oppose the majority's granting of respondents' cross-appeal. I find more than ample evidence to support the findings, conclusions, and judgment of the trial court.

The trial court found that Leon, whose testimony the trial court found to be "less than honest," was guilty of fraudulent concealment and breach of fiduciary relationships in two different and independent respects: (1) in his capacity as a trustee for his sister Marjorie under the written trust agreements and (2) in his capacity as a long-time business partner, confident, joint venturer, and paid business manager of his sister Marjorie Riley. Accepting the record in the light most favorable to the Rileys, as we must, flagrant violations of both of the two different kinds of fiduciary relationships have been demonstrated.

### Breach of Written Trust Agreements

First, with regard to Leon's violation of his duty of good faith as Marjorie's trustee under the written trust agreements, I observe that while Leon was trustee of a portion of the property, he was stealthily dealing on his own account in trying to buy an added portion of the trust corpus by talking his Uncle Earl into giving him for $1,000.00 an option to buy a one-half interest in the property at what can be described as a bargain-basement price.

At Leon's urging (the word "needling" is used in the record), Marjorie's and Leon's Uncle Earl apparently agreed in December, 1966, to give Leon an option to purchase an undivided one-half interest in the property owned by Earl's trust. The option entitled Leon to buy the property for $300,000.00, payable at $2,500.00 per month. At the time he got the option Leon was aware that the property was then bringing in income of almost $5,000.00 per month. Leon told his beneficiary, his sister Marjorie, nothing about his dealings with their uncle.

As stated in the majority opinion, Earl tried to cancel the arrangement in 1972 and filed suit charging that Leon had obtained the option by fraud. This litigation was dismissed in 1977. Whether Leon defrauded his uncle or not (the purchase price is considerably less than the value of the property at the time of the option), it is hard to deny that there is evidence of his having defrauded his sister, for, as the trial court found, Leon "worked systematically and secretly to gain control of The Property and obtain an interest therein greater than Marge's." There is no question in my mind concerning Leon's bad faith dealing with his sister. He lied to her; he lied to the court. Both Leon and his

wife testified that Leon had disclosed, as he should have, the existence of the option. They claimed that Leon had told Marjorie orally and in writing about the option in 1970. This was strongly denied by Marjorie, who testified that Leon had concealed the existence of the option for over thirteen years and that Marjorie had no knowledge of the option transaction until after Earl's death in 1980. The trial court rejected the testimony of Leon and his wife, believed Marjorie, and expressly found that Leon was guilty of a "deliberate, wilful, active and fraudulent concealment" of his secret acquisition of the option from the uncle.

The majority maintains that this stealthful and concealed acquisition of an additional share of the trust corpus by Leon was perfectly legitimate because he was already a co-owner with the trusts. I do not see how this makes any difference at all, and I agree with the statement of Bogert, quoted in the majority, that where a beneficiary holds a fractional interest in property, it is a breach of duty for him to buy for himself (without informing his beneficiaries) another fractional interest in the same property. I also agree with Bogert that such transactions ought to be discouraged even if they are not such obvious breaches of duties as the purchase of some other kinds of competing interests.

The only qualification on the principle stated in Bogert's comment arises in cases in which the trust lacks funds to purchase the interest. Such is not the case here.

Again, I agree with Bogert that if the trustee deals with himself as co-owner with the trust, he "automatically" gives room for possible conflict and dispute; and, I agree with the trial court when it found that while in a position of trust, "Leon personally competed with and profited from and enhanced his own interests to the detriment and at the expense of the interests of the plaintiffs [appellants] and the trusts."

Because of what appears to me to be an obvious fraud and violation of the written trust agreements by Leon, I agree with the trial judge's findings, conclusions, decision and judgment on this point.

### Brother as Partner, Confident and Paid Business Manager of Sister

I believe an even stronger case is made for the propriety of the trial judge's conclusion that there was a breach of trust in Leon's activities when it comes to Leon's role as a trusted partner and paid business manager and consultant of Marjorie's.

The trial court was certainly justified in finding, as it did, that Leon was, from the early 1960's, the manager of The Property and all other related Rockwell property in Las Vegas and that his authority extended to negotiating sales and purchases of property for the trust. The trial court was also justified in finding that

because Marjorie had not lived in Las Vegas for many years, she relied solely upon Leon to provide her with business information concerning the property and "possibilities and/or potential for its expansion and increased profitability."

The trial court also legitimately found that in all matters relating to the Rockwell interests in Las Vegas, Leon had expressly promised to treat his sister fairly, unselfishly, honestly, and that he would "place her interest foremost." In telephone calls and correspondence with Marjorie, Leon frequently referred to his sister and himself as "partners," Leon and Marjorie. For his services as a manager of the partnership Leon charged his sister at the same rate he would have been compensated had he been employed in his profession as a dentist.

The majority says that the property in question was never involved in the partnership relationship. It is true that The Property was never a partnership asset as such, but this certainly does not mean that it could not have been within the expectation of partner Marjorie that her brother, pledged to treat her "fairly," "honestly," "unselfishly," and to "place her interest foremost," would go behind her back and secretly buy Uncle Earl's interest in the trust corpus.

I would agree with the majority that when two people are in a business relationship, *all* transactions of either party must not necessarily be for the benefit of the partnership. This is not the point here. The point here is that the district judge had the opportunity to view first hand the relationship and expectations of the parties. He did not think that Leon was "honest" in his testimony, and he had sound reasons for concluding that Leon, in secretly purchasing trust property on his own account, was violating his fiduciary duty as a partner, and as a paid business and financial advisor to his sister, who invested her complete belief and trust in her brother.

Reading this record I tend to be convinced that had the trial judge found that Leon had *not* been guilty of fraud and breach of trust that such a conclusion should have to be set aside. In light of the nature of the well-supported findings of fact in this case I cannot understand how the majority can conclude, as a matter of law, that the trial court erred in finding no actionable breach of trust in this case.

I would affirm the trial court in the manner stated at the commencement of this dissenting opinion.