# IN THE SUPREME COURT OF THE STATE OF NEVADA

IN THE MATTER OF: THE W.N. CONNELL AND MARJORIE T. CONNELL LIVING TRUST, DATED MAY 18, 1972.

ELEANOR C. AHERN, A/K/A ELEANOR CONNELL HARTMAN AHERN,
Appellant,
vs.
JACQUELINE M. MONTOYA; AND KATHRYN A. BOUVIER,
Respondents.

No. 66231

FILED

JAN 2 6 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
DEPUTY CLERK



IN THE MATTER OF THE W.N. CONNELL AND MARJORIE T. CONNELL LIVING TRUST, DATED MAY 18, 1972, AN INTER VIVOS IRREVOCABLE TRUST.

ELEANOR CONNELL HARTMAN AHERN,
Appellant,
vs.
KATHRYN A. BOUVIER; AND JACQUELINE M. MONTOYA,
Respondents.

No. 67782

IN THE MATTER OF THE W.N. CONNELL AND MARJORIE T. CONNELL LIVING TRUST, DATED MAY 18, 1972, AN INTER VIVOS IRREVOCABLE TRUST.

ELEANOR CONNELL HARTMAN AHERN,
Appellant,
vs.
JACQUELINE M. MONTOYA; AND KATHRYN A. BOUVIER,
Respondents.

No. 68046

SUPREME COURT
OF
NEVADA

(O) 1947A

17-02927

## ORDER DISMISSING APPEAL (DOCKET NO. 66231)
## AND ORDER OF AFFIRMANCE (DOCKET NOS. 67782 AND 68046)

These are consolidated appeals from orders issuing a preliminary injunction, appointing a temporary trustee, granting summary judgment, and awarding attorney fees in a trust action. Eighth Judicial District Court, Clark County; Gloria Sturman, Judge.

*Facts and procedural history*

W. N. and Marjorie T. Connell established the W. N. Connell and Marjorie T. Connell Living Trust dated May 18, 1972. Appellant Eleanor C. Ahern is the only surviving child of W. N. Connell and the adopted daughter of Marjorie. Eleanor has two daughters, respondents Jacqueline M. Montoya and Kathryn A. Bouvier. The 1972 Trust was funded in part with oil, gas, and mineral rights and leases (the oil assets) that were W. N. Connell's separate property and which generated royalties. During the trustors' joint lifetimes, they served as trustees and subtrust No. 1 governed principal and distributions.

W. N. Connell died in November 1979. Upon the first trustor's death, the 1972 Trust provided that the assets therein were to be divided into two subtrusts, Trust No. 2, of which Eleanor was the beneficiary, and Trust No. 3, of which Marjorie was the beneficiary. Marjorie remained trustee. In May 1980, Marjorie filed a substitution of trustee, adding Eleanor "as co-trustee of the separate property [the oil assets] of W. N. Connell presently held in the [1972] Trust." Between 1980 and Marjorie's death in 2009, Marjorie received 65% of the oil royalties and Eleanor received 35%. During this time, K-1 tax forms were prepared for Marjorie for Trust No. 3, and Eleanor for Trust No. 2, reflecting this distribution. The oil assets remained titled in the 1972 Trust, and were not split into Trust No. 2 or Trust No. 3. While division orders from the oil companies

SUPREME COURT
OF
NEVADA

(O) 1947A

listed Marjorie and Eleanor as co-trustees of the 1972 Trust, starting in 1986, Marjorie provided the oil companies with an IRS employee identification number (EIN) for Trust No. 2. An affidavit from Marjorie's tax preparer for the 1972 Trust stated that Marjorie provided Trust No. 2's EIN to the oil companies because it was associated with the bank account that Marjorie used to collect and distribute the royalties and so that the oil companies would have an EIN for recordkeeping purposes, not to reflect any change in ownership.

Marjorie executed a pour-over will that exercised the power of appointment in Trust No. 3, which on her death transferred the assets in Trust No. 3 to the MTC Living Trust, whose beneficiaries were respondents. After Marjorie's death, title to the oil assets remained with the 1972 Trust, but the parties continued to split the royalties, 65% to respondents and 35% to Eleanor. In 2013, Eleanor ceased distributions of the royalties to respondents, claiming that Trust No. 2 owned 100% of the oil assets and that the previous 65% distribution of royalties had been gifts from Eleanor.

Respondents initiated the underlying litigation, petitioning the court in 2013 and 2014 for declarations that the MTC Trust owned 65% of the oil assets, for attorney fees based on Eleanor's alleged breach of fiduciary duties, and for a preliminary injunction directing Eleanor to distribute 65% of the royalties to the MTC Trust. The parties subsequently filed cross-motions for summary judgment.

The district court ordered the appointment of a new temporary trustee pending the resolution of this litigation and granted a preliminary injunction conditioned on respondents posting a bond. The district court later granted summary judgment in respondents' favor, construing the

 

1972 Trust as requiring a split of the oil assets with Trust No. 2 receiving a 35% interest and Trust No. 3 receiving a 65% interest, and that regardless, laches barred Eleanor from asserting that Trust No. 2 owned 100 percent of the oil assets. The district court also granted summary judgment on respondents' breach-of-fiduciary-duty claim and awarded them attorney fees under NRS 153.031. Eleanor appeals.

*Summary judgment regarding the trust interpretation*

Under the 1972 Trust, Trust No. 1 held all of the oil assets during the trustors' joint lifetimes. Upon the first trustor's death, the trustee was required to allocate to Trust No. 3 the fractional share of W. N. Connell's separate property (i.e., the oil assets) "equal to the maximum marital deduction allowed" by federal tax law, less any other amounts that qualified as a marital deduction but that were not a part of the 1972 Trust. The remaining fractional portion of the oil assets was to be allocated to Trust No. 2. In light of the evidence, the district court correctly determined that under the 1972 Trust, Trust No. 2, and thus Eleanor, received a 35% interest in the oil assets and the remaining 65% was apportioned to Trust No. 3, and thus to respondents as beneficiaries under the MTC Trust. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005) (reviewing de novo a district court's summary judgment and recognizing that summary judgment is proper where there are no genuine issues of material fact); *see In re Cable Family Trust*, 231 P.3d 108, 111 (N.M. 2010) (reviewing trust interpretation de novo).

Although Eleanor contends that the fourth article, which provides that "All income received by this Trust from the separate property of the Decedent shall be paid to [Eleanor]," governs the entire trust, that article governs Trust No. 2, only. Applying the fourth article to the entire 1972 Trust instead of just Trust No. 2 would create an

SUPREME COURT
OF
NEVADA

(0) 1947A

4

inconsistency by requiring income from other portions of the 1972 Trust, of which Eleanor is not a beneficiary, to be paid to Eleanor as the beneficiary of Trust No. 2. Thus, interpreting the 1972 Trust as a whole requires rejecting Eleanor's construction. *Rd. & Highway Builders, LLC v. N. Nev. Rebar, Inc.*, 128 Nev. 384, 390, 284 P.3d 377, 380-81 (2012) (explaining that the intentions of contracting parties are ascertained by considering documents as a whole).

Eleanor's interpretation would also render the third article superfluous. *Musser v. Bank of Am.*, 114 Nev. 945, 949, 964 P.2d 51, 54 (1998). The third article provides that a fractional share of the oil assets "equal to the maximum marital deduction" shall be allocated to Trust No. 3, and when making that allocation, the determination of the amount allocated "shall be as finally established for federal estate tax purposes." Although a copy of the federal estate tax return filed on W. N. Connell's behalf could not be located, respondents provided an IRS closing letter, which reflected a net federal estate tax for W. N. Connell of $18,081, and a Texas estate tax return for W. N. Connell, which was facially based on the federal estate tax form and which indicated 64.493% of the oil assets had been distributed to Marjorie, via Trust No. 3, and 35.507% had been distributed to Eleanor, via Trust No. 2. Respondents' expert witness stated that the distribution on the Texas return was consistent with maximizing the marital tax deduction for federal estate tax purposes and with the IRS closing letter.[1]

---

[1]While Eleanor argues on appeal that the expert witness report that respondents submitted as evidence was hearsay or did not meet NRCP 56(c) and (e)'s affidavit requirements, this argument was not made in the
*continued on next page...*

While Eleanor argues that because the Texas return erroneously showed that Marjorie, instead of Trust No. 3, inherited 65% of the oil assets, the return "could contain other errors as well," Eleanor failed to offer evidence supporting her contentions and her speculation that there may be other inaccuracies is insufficient to defeat summary judgment. *See* NRCP 56(e); *Wood*, 121 Nev. at 732, 121 P.3d at 1031. Similarly, although Eleanor argued that the Texas return was unreliable because respondents' expert report indicated that W. N. Connell had $3,674 of separate property outside of the 1972 Trust that partially offset the marital deduction, Eleanor failed to offer evidence that W. N. Connell had additional property or funds that were not accounted for and which could have further reduced the oil assets allocated to Trust No. 3. *Wood*, 121 Nev. at 729, 121 P.3d at 1029.

Eleanor also points to several acts between 1980 and 2009 that she argues demonstrate Trust No. 2's ownership of 100% of the oil assets. These post hoc acts are generally irrelevant because the third article in the 1972 Trust explicitly provides that "the determination of the character and ownership of the said property and the value thereof shall be as finally established for federal estate tax purposes." Regardless, these acts do not raise genuine issues of material fact that would preclude summary judgment.

In particular, although Eleanor argues that the failure to distribute the oil assets to the MTC Trust demonstrates that Trust No. 2 owns 100% of the assets, this argument fails to recognize that the assets

---

...*continued*

district court and we therefore decline to consider it on appeal. *Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981).

are titled in the name of the 1972 Trust, not Trust No. 2, and that Eleanor, as trustee, was the only person who could have distributed the oil assets in accordance with the 1972 Trust and Marjorie's exercise of her appointment powers. Eleanor should not benefit from her own failure to perform her duties as trustee. Eleanor also argues that she and Marjorie identified Trust No. 2 as the owner of the oil assets when they conducted business with the oil companies; however, all of the division orders and correspondence with the oil companies reflect the 1972 Trust as the owner of the oil assets.

Finally, although Eleanor argues Trust No. 2's ownership of the oil assets is demonstrated by the fact that Trust No. 2's EIN was provided to the oil companies, this argument fails because an affidavit from Marjorie's tax preparer stated that Trust No. 2's EIN was provided for record keeping purposes and the record shows that tax returns were filed for both substrusts between 1980 and 2013, all of which reflect the 65/35 split of the oil royalties. Eleanor did not meaningfully refute this evidence and, moreover, she never filed a gift tax return to support her assertion that her distribution to Marjorie was a gift. Thus, aside from her affidavits concerning the use of Trust No. 2's EIN, Eleanor did not provide any evidence that Trust No. 2 owned 100% of the oil assets. As none of the acts that Eleanor points to are sufficient to raise a genuine issue of material fact as to the 1972 Trust's distribution of the oil assets, the district court did not err in concluding that the 1972 Trust contemplated a distribution of the oil assets into the subtrusts and that the undisputed evidence demonstrated that the oil assets were split 65%

into Trust No. 3 and 35% into Trust No. 2 upon W. N. Connell's death. Therefore, we affirm the district court's summary judgment.[2]

*Summary judgment regarding breach of fiduciary duty and attorney fees*

Concerning the summary judgment on breach of fiduciary duties and the resulting award of attorney fees, we agree with the district court that Eleanor breached her fiduciary duties of impartiality and to avoid conflicts of interest when she unilaterally ceased distributions to respondents without seeking court instructions and when she advocated as trustee for a trust interpretation favoring herself as beneficiary; consequently, attorney fees were warranted. NRS 153.031(3)(b) (providing that the district court may award a petitioner attorney fees "to redress or avoid an injustice" and that a trustee may be made personally liable for the attorney fees if the trustee "breached his or her fiduciary duties"); *Riley v. Rockwell*, 103 Nev. 698, 701, 747 P.2d 903, 905 (1987); Restatement (Third) of Trusts § 79 (2007); *see Hearst v. Ganzi*, 52 Cal. Rptr. 3d 473, 481 (Ct. App. 2006) (recognizing a trustee's duty to treat all beneficiaries equally); *see also In re Duke*, 702 A.2d 1008, 1023-24 (N.J. Super. Ct. Ch. Div. 1995) (explaining that a trustee may not advocate for either side in a dispute between beneficiaries). We therefore affirm the district court's summary judgment and award of attorney fees under NRS 153.031(3).

*Preliminary injunction*

In light of this order, the preliminary injunction has merged with the final judgment. *Grupo Mexicano de Desarrollo S.A. v. All. Bond*

---

[2]In light of our conclusion, we need not consider the district court's alternative basis of "laches" for summary judgment.

*Fund, Inc.*, 527 U.S. 308, 314 (1999). It is therefore moot, *Personhood Nev. v. Bristol*, 126 Nev. 599, 602, 245 P.3d 572, 574 (2010), and we dismiss Eleanor's appeal of the preliminary injunction in Docket No. 66231. Accordingly, we

ORDER the judgments of the district court in Docket Nos. 67782 and 68046 AFFIRMED and the appeal in Docket No. 66231 DISMISSED.[3]

_____, J.
Douglas

_____, J.
Gibbons

_____, J.
Pickering

cc:    Hon. Gloria Sturman, District Judge
       Robert F. Saint-Aubin, Settlement Judge
       Brownstein Hyatt Farber Schreck, LLP/Las Vegas
       The Rushforth Firm, Ltd.
       Albright Stoddard Warnick & Albright
       Eighth District Court Clerk

---

[3]As to the order appointing a new temporary trustee, Eleanor failed to address this issue in her opening brief and we thus decline to consider it. *Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006). We have considered the parties' remaining contentions on appeal and conclude that they do not warrant a different outcome.