Estate of Nancy B. Alden v. Dee, No. 427-12-06 Bncv (Wesley, J., Mar. 3, 2010)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                BENNINGTON SUPERIOR COURT
BENNINGTON COUNTY            DOCKET NO. 427-12-06 Bncv


ESTATE OF NANCY B. ALDEN, by its executor   )
SETH ALDEN   )
        **Plaintiff/Counterclaim Defendant**   )
   )
       **v.**   )
   )
JULIA DODGE ALDEN DEE and   )
TODD HOWARD ALDEN   )
        **Defendants/Counterclaim Plaintiffs**   )
   )
       **v.**   )
   )
SETH ALGER ALDEN and   )
CORNELIA DODGE ALDEN   )
        **Counterclaim Defendants**   )

**OPINION & ORDER**
**GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING**
**DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT**


This case stems from a dispute over the 1973 William C. Alden Trust (the Trust) benefitting grantor's second wife Nancy Alden, his two children by Nancy Alden, and his three children from his first marriage. Todd Alden and Julia Alden Dee, two of grantor's children by his first marriage, allege that Nancy Alden, who was also a trustee of the Trust, acted fraudulently and in violation of her fiduciary duties in her administration of the Trust. They seek to hold Nancy and her two children liable for damages resulting from these alleged improprieties. Pending before the Court are cross motions for summary judgment. Plaintiff/Counterclaim Defendant Estate of Nancy B. Alden, by its executor Seth Alden, and Counterclaim Defendants Seth Alden and Cornelia Alden (Plaintiffs) are represented by Gary F. Karnedy, Esq., and Primmer Piper Eggleston & Cramer, PC. James B. Anderson, Esq. represents Defendants/Counterclaim Plaintiffs Julia Dee and Todd Alden (Defendants).

# I.    Procedural Background

In December 2006, Nancy Alden, as co-trustee and beneficiary of the Trust, filed a complaint for declaratory judgment seeking to release and replace the Trust's two other co-trustees, thereby commencing this protracted litigation. Julia Dee and Todd Alden withheld their consent to the substitution. On February 27, 2007, Nancy[1] filed a revised complaint, naming Julia and Todd as Defendants.

On April 26, 2007, this Court issued an order confirming the parties' stipulated agreement to replace the co-trustees. This order also reserved all of Defendants' claims related to the operation of the Trust, and against Nancy in particular. *The 1973 William C. Alden Trust v. Dee*, No. 427-12-06 Bncv (Vt. Super. Ct. Apr. 26, 2007) (Wesley, J.). Defendants thereafter filed, on May 24, 2007, an answer and counterclaim, alleging that Nancy Alden breached her fiduciary duties in the administration of the trust. The Court denied Nancy Alden's subsequent motion to dismiss Defendants' answer and counterclaims. *The 1973 William C. Alden Trust v. Dee*, No. 427-12-06 Bncv (Vt. Super. Ct. Aug. 23, 2007) (Wesley, J.).

On September 19, 2007, Nancy's children, Seth and Cornelia Alden, filed a complaint in this Court for declaratory judgment terminating the Trust and distributing one-third of the Trust assets to Nancy and the remaining two-thirds in equal shares to William's five children. In a Final Order filed November 12, 2008, the Court terminated the Trust and mandated distribution of Trust assets, one-third to Nancy and the remaining two-thirds divided equally among the five children. *Alden v. Dee*, No. 352-09-07 Bncv (Vt. Super. Ct. Nov. 12, 2008) (Howard, J.).[2]

Meanwhile, action continued on Defendants' counterclaims. On February 19, 2009, the Court granted Defendants' motion to amend the counterclaim to add their half-siblings, Seth and Cornelia Alden, as counterclaim defendants, and to add a new Count 7. Count 7 alleges that Nancy fraudulently concealed and misrepresented material facts in the appointment of successor trustee George Smith in order to obtain Trust distributions which damaged Defendants' interest and that Nancy fraudulently transferred those distributions to trusts for her benefit and the benefit of Seth and Cornelia Alden.

---

[1] In the interest of clarity and brevity, the Court will, as the parties have done, refer to the individuals involved in this action by their first names.

[2] Todd and Julia filed an appeal in that matter, challenging the Court's refusal to amend the Final Order to clarify that termination of the Trust did not preclude their breach of fiduciary duty claims in this action. The Vermont Supreme Court affirmed this Court's decision not to amend the judgment, but indicated that termination of the Trust did not preclude the present action. *Alden v. Alden*, 2010 VT 3 (mem.).

On October 5, 2009, Defendants filed a motion to substitute several parties in place of Nancy Alden as a result of Nancy's death on September 21, 2009. The Court granted Defendants' motion in part, allowing the counterclaims originally brought against Nancy Alden to continue against the Estate of Nancy Alden, by its Executor Seth Alden. The counterclaims against the Estate, Seth, and Cornelia are the only issues still pending in this suit, and are the subject of both motions for summary judgment.

## II.    Factual Background

The following facts are derived from the statements filed by the parties pursuant to V.R.C.P. 56(c)(2). The majority of factual allegations made by each party is consistent with the other party's allegations and is not disputed. The facts that were properly disputed by the parties' statements are noted below.[3] The factual background in this case is lengthy; the facts provided here give background information necessary to understand the context of the dispute. Facts pertinent to each specific claim are presented in the analysis of that claim below.[4]

### 1. The Alden Family

William C. Alden was divorced from Suzanne Leari in 1967. William and Suzanne had three children together: James, Julia (Julie), and Todd. In 1972, William Alden and Nancy Bierce were married. Together they had two children: Cornelia and Seth. James, Julie, and Todd lived primarily with their mother in Connecticut but spent occasional weekends and holidays with William, Nancy, Cornelia, and Seth. Throughout Nancy's marriage to William, she had very good relationships with Todd and Julie. Gradually, these relationships grew distant and eventually became antagonistic over issues relating to the Trust.

---

[3] Defendants ask the Court to accept their statement of facts as undisputed, asserting that Plaintiffs' response to Defendants' statement of facts makes only argumentative or bald denials and does not properly controvert the facts with citations to the record as required by V.R.C.P. 56(c)(2). The Court declines to reject Plaintiffs' response wholesale. This is not a case where the opposing party failed entirely to file a separate statement of disputed facts. Contra, *Webb v. Leclair,* 2007 VT 65, ¶ 5, 182 Vt. 559 (accepting facts as undisputed where other side "failed to submit any separate statement of facts at all"). Plaintiffs do properly challenge some of Defendants' statements with citations to the record. In other cases, Plaintiffs' responses do not cite to the record, but are offered to dispute a fact which Defendants themselves offer no record support for (see e.g., Def.s' Facts ¶¶ 29, 45) or to explain more fully what is contained in the document that Defendants' fact cites (see e.g., Defendants Facts ¶¶ 69, 77). The Court has carefully reviewed the statements of fact and disputed issues of fact in each party's statement and response. The facts presented and relied on in this decision reflect only those facts which the Court finds to be supported by "specific citations to the record." V.R.C.P. 56(c)(2).

[4] In the interest of clarity and comprehension, except where deemed essential, this opinion does not include references to the summary judgment record supporting particular facts. However, an annotated version will be provided to the parties, made part of the file, and is incorporated herein by reference.

William was domiciled in Vermont when he signed his will and trust in 1973 and the codicils and amendments in 1974. These documents were drafted for William by Massachusetts attorney Michael Brockelman. William moved to Williamstown, Massachusetts on or about March 23, 1979, when he and Nancy purchased their residence at [address redacted]. Nancy remained domiciled in Williamstown until late 2005 when she sold the residence and moved to Pownal, Vermont. Nancy was domiciled in Pownal when she initiated this action.

## 2. William Alden's Estate

William Alden died August 22, 1980. At that time, Nancy was thirty-six years old, James was twenty one, Julie was seventeen, Todd was sixteen, Cornelia was six, and Seth was a few days shy of three years old. At the time of his death, William was domiciled in Massachusetts and his will was probated in Berkshire County, Massachusetts. Nancy was named executor of William's estate, and was represented in this capacity by Attorney Brockelman. Todd and Julie were both parties to the probate proceedings in that notice of probate matters was provided to them through a guardian ad litem or their mother. However, Defendants assert that they did not learn of their father's estate plan, particularly the existence of the Trust, until late 1992, in response to inquiries by Todd.

Plaintiffs insist that Defendants were aware of the Trust in 1982 when they, as eighteen and twenty year old adults, signed the 1973 William C. Alden Trust Agreement as to Compensation. Defendants admit to signing the agreement but dispute that they understood what they were signing or that this Trust was distinct from other trusts created for their benefit by their grandparents, or that the terms of the Trust were disclosed to them at that time. Todd and Julie did receive copies of the Trust from Attorney Brockelman in early 1993. Then, in November 1993, after two family meetings earlier that year attempting to resolve the issues the alleged concealment of the Trust had created between Nancy, Todd, and Julia, Defendants received a letter of introduction and their first accounting from the corporate trustee, State Street Bank.

## 3. The 1973 William C. Alden Trust

### A. *The General Terms of the Trust and the Trust Beneficiaries*

The 1973 William C. Alden Trust was established, in relevant part, to manage William's assets for the benefit of Nancy, James, Todd, Julie, Cornelia, and Seth. Pursuant to its express terms, the Trust was divided into two parts upon William's death. First, a Marital Trust was

4

funded solely for the benefit of Nancy to provide for her "comfort, support and happiness."[5] Second, a Residuary Trust was funded to provide for the "comfort, support, education and happiness" of Nancy and the five children during Nancy's lifetime, with the trust to be split into equal shares for each of William's children after Nancy's death, and each child's share to be fully distributed by the time that child reached age thirty-five. Plaintiffs maintain that the assets in the Residuary Trust were to benefit Nancy primarily and all of William's children secondarily. Defendants dispute this characterization, but acknowledge that the trust was so interpreted by co-trustees George Smith and State Street Bank. The successor corporate trustee, Factory Point National Bank, has not followed this interpretation, instead advising that "the trust language does not give preference to any beneficiary."

With respect to distributions from the Residuary Trust, the Trust instrument directs, in pertinent part, as follows:

> B. . . . [T]he Trustee shall pay such part or all of the income and principal as the Trustee deems proper in his absolute discretion to or for the benefit of the Grantor's wife, Nancy B. Alden, during her lifetime if she survives the Grantor and to or for the benefit of the Grantor's children or more remote issue, both during the lifetime of the Grantor's said wife and thereafter for their comfort, support, education and happiness. The Trustee may pay such income or principal to or for the benefit of any one or more of such beneficiaries to the exclusion of another or others as the Trustee shall determine, and notwithstanding the fact that one or more ancestors of such a beneficiary may be living at the time of such payment. The Trustee may accumulate any part of the income and may add any part or all of such accumulated income to the principal. No equalization of payments among the beneficiaries is required by the Trustee at any time, and the Trustee shall not be obligated to inquire into or consider other sources of income which the beneficiaries may have in exercising their discretion as to the payments to be made to the beneficiaries hereunder.
>
> C. At such time after the death of the Grantor's wife, Nancy B. Alden, when there are no living children of the Grantor under the age of twenty-five (25), the Trustee shall divide the trust property (including the principal, any accumulated income and accrued income) into as many equal shares as there are children of the Grantor then living and deceased children of the Grantor with issue then living. One share shall be allocated to each child then living and one share be allocated to the then living issue of each child then deceased. The Trustee shall hold and distribute such shares as follows . . . .
>
> E. The Trustee may be most liberal in exercising his discretion as to the distribution of income and principal, even to the extent of terminating any trust

---

[5] The Marital Trust was terminated when Nancy took possession of the assets of that Trust on or about April 15, 1987. The present dispute involves the Residuary Trust only.

hereunder by distribution of principal to or for the benefit of the beneficiaries. Both while the Grantor's wife is living and after her death there may be good reason to exercise such discretion on behalf of the Grantor's children and their issue for such purposes (without limitation) as assisting in their education, helping them in starting their careers, providing them the means of travelling, and aiding them in purchasing homes. If any trust hereunder becomes so small that it seems uneconomical to continue the trust, such discretion to distribute principal could be the means of terminating such trust.

The Trust also directs that "[c]ommencing at such time when the Trust has assets valued at $100 or more . . . the Trustee shall render annually to the beneficiary or beneficiaries to whom payments shall then be made an accounting of the administration of the trusts hereunder." Defendants received their first accounting from the trust in November 1993, thirteen years after Mr. Alden's death. Under the terms of the Trust, any objection to an item on the account must be made within 60 days from the issuance of the accounting, and "[i]n the absence of such objection all beneficiaries, whether or not in being or ascertained, shall be barred from objecting thereto."

### B. The Trustees of the Trust

After William's death, the Trust was to be administered by three trustees, consisting of two individual trustees and one corporate trustee. Any action taken by the trustees, including distributions, required the approval of the majority of the trustees. The corporate trustee, State Street Bank, interpreted that language to mean that Nancy, as both a trustee and a beneficiary, could not participate in the distribution of Trust assets to herself, thus distributions to Nancy required the approval of the other two trustees.

In the time period relevant to this dispute, Nancy Alden served as one of the two individual trustees and two different people filled the remaining individual trustee position. Edward Greaves, Nancy's brother-in-law and Defendants' uncle, occupied that post from 1982 through October 3, 1999, when he resigned for health reasons. From the date of Greave's resignation through September 12, 2001, Nancy Alden and State Street Bank (which was subsequently acquired by U.S. Trust Company) were the only Trustees.

Throughout her tenure as trustee, Nancy regularly sought advice on trust issues from Vermont attorney John Newman and Massachusetts attorney Brian Quinn. Attorney Quinn investigated candidates to fill the vacant individual trustee position and in 2001, Attorney Newman wrote to Defendants proposing George Smith, a CPA licensed in Vermont and Massachusetts, who has served as trustee of many trusts, as replacement individual trustee.

6

Attorney Quinn sent a follow up letter to Defendants assuring them that none of the Plaintiffs had had any dealings with Mr. Smith but disclosing that Attorney Quinn had known Smith professionally for twenty-five years and that he was a person of good judgment, intelligence, and integrity. All beneficiaries were asked to consent to Smith's appointment. Nancy, Seth, Cornelia, James and Julie each provided their consent— Todd did not. On September 12, 2001, the Massachusetts Probate Court, Berkshire Division, appointed George T. Smith as Greaves' successor co-trustee. Smith served as co-trustee until this Court approved his resignation on April 26, 2007.

Between 1990 and 2000, the corporate trustee was State Street Bank and Trust Company (State Street Bank). In 2000, State Street Bank was acquired by U.S. Trust Company, who under the terms of the Trust, stepped into State Street Bank's position and served as corporate trustee until April 25, 2007. Donna Brown was the trust officer for State Street Bank, and subsequently U.S. Trust Company, assigned to the Trust. The corpus of the Trust was located in Boston, Massachusetts, and the corporate trustee handled the day-to-day administration of the Trust. By an Order filed April 26, 2007, this Court released U.S. Trust Company as trustee and appointed Factory Point National Bank as successor corporate trustee.

Leading to the Court's order of April 26, 2007, Defendants agreed to release both George Smith and U.S. Trust Company as trustees. As part of the stipulated release, Defendants agreed to "ratify, approve, and confirm in all respects the administration of the Trust and all acts of the Trustee in connection with the administration of the trust." Defendants assert that this ratification is ineffective because material facts relating to the acts they were ratifying were concealed from them when the releases were signed.

### C. Scrivener's Error

On December 7, 1973, the Trust was amended by William Alden to provide, *inter alia*, that "[t]he laws of the State of Vermont shall govern the interpretation of this instrument." Because the terms of the Trust did not expressly restrict Nancy's authority to distribute Trust assets to herself, this amendment created a general power of appointment in Nancy under Vermont law. This general power of appointment would cause the Trust assets to be included in her federal taxable estate if she died holding the power (the Estate Tax Problem).[6] The Estate Tax Problem was contrary to the intent of William, evidenced in the Trust itself, which was to

---

[6] The Court does not make any findings as to the legal effect of the 1973 amendment, but accepts the parties' undisputed conclusions about the estate tax consequences as true for present purposes.

minimize Nancy's estate tax. In an attempt to avoid the estate tax consequences of the scrivener's error, the Trust eventually brought a reformation action in Massachusetts. The Supreme Judicial Court of Massachusetts ultimately declined to reform the Trust.

Nancy also purchased a life insurance policy, which she placed in an irrevocable life insurance trust (ILIT), the proceeds of which would be used to pay any estate tax at Nancy's death resulting from the scrivener's error. In May 2000, Nancy requested an increase in her monthly distributions from the trust in order to pay the premiums on that insurance policy. These distributions were approved by State Street Bank and George Smith.

*D. The Northwest Hill Road Property*

In 1979, William Alden, together with two other individuals, purchased a sixty-five acre parcel of land (the Property) adjoining William and Nancy's residence at [address redacted] in Williamstown, Massachusetts. Each owned an undivided one-third interest in the property. Mr. Alden's one-third interest was included in the inventory of his probate estate and, pursuant to his Will, was distributed to the Trust. In 1982, Nancy Alden purchased the remaining two-thirds interest in the Property for $56,000. The deed conveying the Property to Nancy was dated February 6, and recorded February 18, 1982. She was both Executor of William's Estate and a trustee of the Trust at the time, but she purchased and took title to the property in her individual capacity. In March 2000, Nancy requested that the Trust distribute its one-third interest in the property to her. This request was eventually approved by State Street Bank and George Smith in November or December 2001. Nancy did not disclose her request for the one-third interest to the other beneficiaries.

### III. Summary Judgment Motions

Plaintiffs seek summary judgment on Counts One, Two, Three, Four and Seven of the counterclaim,[7] arguing that there are no genuine issues of material fact, Defendants' claims are time barred, and, to the extent any claim is still viable, Defendants have failed to produce evidence to establish essential elements on which they have the burden of proof at trial. Defendants filed a cross motion for summary judgment on Counts One through Five, and Seven,

---

[7] Plaintiffs describe these counts as the "remaining substantive charges of the counterclaim." Count Five is a request for attorney's fees, which would be moot if summary judgment were granted for Plaintiffs on Counts One through Four and Seven. Count Six of the original counterclaim was a request for accounting which Plaintiff agreed to provide in her original answer, thus there is no issue to be decided.

8

agreeing that there are no genuine issues of material fact but asserting that they have presented uncontested evidence that establishes the essential elements of their claims.

In response to these motions, the Court issued an entry order setting a hearing on the motions and clarifying several issues raised therein. *Estate of Nancy B. Alden v. Dee,* 427-12-06 Bncv, Entry Order, Dec. 1, 2009 (J. Wesley). In response to choice of law questions raised by the Plaintiffs, the Court ruled that, pursuant to the terms of the Trust, Vermont law would govern the substance of this case, as well as procedural and statute of limitations issues. Further, the Court indicated that the newly enacted Vermont Trust Code would apply to many of the substantive issues raised. In supplemental briefs responding to this order, neither party disputed that the Vermont Trust Code applied, though Defendants did make some argument against retroactive application of Trust Code's limitation on actions for breach of trust.

Through oral argument presented at the hearing on December 30, 2009, it became clear that despite the voluminous filings associated with this matter, and substantial overlap between causes of action arising from a common factual nexus, each party's motion turns on the resolution of four specific issues: (1) whether Nancy breached her fiduciary duties by purchasing the two-thirds interest in the Williamstown property; (2) whether Nancy breached her fiduciary duties by requesting and accepting certain distributions from the Trust; (3) whether Nancy breached her fiduciary duties by pursuing a reformation action in Massachusetts; (4) whether Nancy committed fraud in relation to the appointment of trustee George Smith. While acknowledging that each party's motion must be judged individually, because the motions are based on the same four claims, the Court will consider the arguments of each party issue-by-issue.

## IV.     Summary Judgment Standard

Summary judgment is appropriate only if the moving party demonstrates that no genuine issue of material fact exists and that she is entitled to judgment as a matter of law. V.R.C.P. 56(c)(3); *Endres v. Endres*, 2008 VT 124, ¶ 10, 185 Vt. 63. "[T]he nonmoving party has the burden of submitting credible documentary evidence or affidavits sufficient to rebut the evidence of the moving party." *Endres*, 2008 VT 124, ¶ 10. Where there has been an adequate time for discovery, summary judgment is mandated if the non-moving party "'fails to make a showing sufficient to establish the existence of an element' essential to his case and on which he has the

9

burden of proof at trial." *Poplaski v. Lamphere*, 152 Vt. 251, 254-55 (1989) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)).

Where both parties move for summary judgment, the Court must rule on each party's motion "on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2720. Each party is entitled to the benefit of all reasonable doubts and inferences when the opposing party's motion is being judged. *Bixler v. Bullard*, 172 Vt. 53, 57 (2001) (citing *Toys, Inc. v. F.M. Burlington Co.*, 155 Vt. 44, 48 (1990)). "Both motions must be denied if the court finds that there is a genuine issue of material fact." 10A Wright at Civil 3d § 2720.

## V.      Analysis

Before reaching the specifics of each claim, some general discussion of which statute of limitations applies is needed. In their original summary judgment motions, the parties agreed that the general six-year statute of limitations for civil actions applied to both the fiduciary duty and fraud claims. The Court agrees that the fraud claim is subject to this limitation period. See 12 V.S.A. § 511 and *Lodge at Bolton Valley Condo. Ass'n. v. Hamilton,* 2006 VT 41, ¶¶ 3, 10, 180 Vt. 497. However, given the intervening enactment of the Vermont Trust Code (VTC), the limitation on actions for breach of fiduciary duty is less clear.

Prior to enactment of the VTC, breach of fiduciary duty claims must have been brought within six years of the date the injury and its cause were, or should have been, discovered. 12 V.S.A. § 511; *Univ. of Vermont v. W. R. Grace and Co.*, 152 Vt. 287, 290 (1989) ("[T]he discovery rule should be read into § 511."); *Lodge at Bolton Valley Condo. Ass'n. v. Hamilton*, 2006 VT 41, ¶¶ 3, 10. But, effective June 1, 2009, section 1005 of the VTC created a limitations period specific to actions against trustees for breach of trust. 14A V.S.A. § 1005. If the beneficiary received a report adequately disclosing the potential claim, she has one year to commence suit, otherwise the limitation period is three years from the first of the following events to occur: the trustee's removal or death, termination of the beneficiary's interest, or termination of the trust. *Id*. § 1005(a), (c). Which limitation period applies is a matter of law for the Court to decide. *Earle v. State,* 170 Vt. 183, 185 (1999).

Though it became effective after Defendants' counterclaims were filed, the VTC applies retroactively to this litigation, unless such application would "prejudice the rights of the parties."

10

14A V.S.A. § 1204 (a)(4). Defendants' argue that their right to a remedy in this case would be prejudiced by application of the VTC limitations period, which reduces the time they had to file a claim for breach of fiduciary duty from six years to one year. It appears that Plaintiffs could also be prejudiced by application of the VTC limitations period, which, though it shortens the general six year statute of limitations, actually extends the time for Defendants to object to a trust distribution.[8] The VTC provides that if a right is subject to a limitations period "that has commenced to run under any other statute *before the effective date of this title,* that statute continues to apply to the right . . . ." 14A V.S.A. § 1204(b). This statutory pronouncement is consistent with the common law rule in civil actions that the limitation period in effect when the claim accrues is applied. *Lillicrap v. Martin,* 156 Vt. 165, 177 (1989); see also *Stewart v. Darrow,* 141 Vt. 248, 252–53 (1982). This rule reflects a general policy against the retroactive application of statutes where doing so would affect any proceeding to enforce a right. *Stewart,* 141 Vt. at 251 (citing 1 V.S.A. § 214(b)).

Though the accrual date of each of Defendants' claims is disputed, presumably all of the claims had accrued when the counterclaim was filed on May 24, 2007, well before the VTC statute of limitations existed. Therefore, in light of both the express mandate of the VTC and the common law rule, the Court will apply the general six-year statute of limitations in effect when Defendants' fiduciary duty claims accrued. However, to the extent any of the claims amount to an objection to Trust distributions, the sixty day limitations period created under the terms of the Trust shall apply. Against this backdrop, the Court turns to the statute of limitation and substantive arguments with respect to the specific claims.

1. **Two-Thirds Interest in the Williamstown Property**

In count one of the counterclaim, Defendants allege that Nancy breached her fiduciary duties of loyalty and care by acquiring a two-thirds interest in property on Northwest Hill Road in Williamstown (the Property) while she was a trustee of the Trust, which owned the other one-third interest. The following facts related to this claim are undisputed.

In 1979, William Alden, together with two other individuals, purchased the Property, which adjoined his and Nancy's residence at [address redacted]. Each owned an undivided one-third interest in the Property. Upon his death in 1980, Mr. Alden's one-third interest passed to the Trust. On February 6, 1982, Nancy Alden purchased the remaining two-thirds interest in the

---

[8] The Trust requires that beneficiaries make any objections to trust distributions within sixty days of receiving an accounting—the VTC increases the time to object to accountings to one year and would override contrary terms of the trust. 14A V.S.A. § 105(b)(10) (limitations period of code prevails over terms of trust); 14A V.S.A. § 1005(b).

Property for $56,000—the deed was recorded on February 18, 1982. She was both executor of William's Estate and a trustee of the Trust at the time of this purchase, but she purchased and took title to the property in her individual capacity. The record contains no information about the circumstances of the offer, including whether Nancy discussed it with the other trustees. The record does not establish that the Trust was funded at the time of Nancy's purchase; the only evidence justifies the inference that it was not.

On September 13, 1993, Nancy sent a letter to all five Alden children, explaining that she owned a two-thirds interest in the Property and wanted to obtain the remaining one-third interest from the Trust. She proposed to transfer to the children property she owned in Brookline, Vermont, in exchange for distribution of the one-third interest from the Trust. The letter did not disclose that Nancy was a trustee at the time she purchased the two-thirds interest, or that she intended to develop the Property. The letter stated that the Property was a liability to the Trust due to the expenses it generates and the fact that it could not be readily sold. Nancy's proposed property exchange was rejected by Defendants, who believed that the Property was worth significantly more than the Brookline real estate. This offer resulted in a great deal of resentment and distrust of Nancy by the Defendants.

The Trust document discloses that Nancy was a trustee of the Trust from the time of William's death. Todd received a copy of William Alden's Will and Trust in January 1993. Julie acknowledges receiving a copy of the Trust document, likely in 1993, though she cannot recall the exact date. Both Todd and Julie received a letter from corporate trust officer Donna Brown in November of 1993, which makes reference to Nancy as one of the co-trustees.

*a. Statute of Limitations—Two-thirds Interest*

As the party asserting the statute of limitations defense, Plaintiffs bear the burden of demonstrating that these claims are barred. *Fucci v. Moseley & Fucci Assocs., Ltd.*, 170 Vt. 626, 627 (2000). Defendants filed the counterclaim on May 24, 2007. Therefore, under the applicable six year limitations period,[9] if this claim accrued before May 24, 2001, it is time-barred and summary judgment must be granted for the Plaintiffs as to this claim.

A cause of action accrues when the plaintiff discovers, or should have discovered, both the injury and it is cause. *Pike v. Chuck's Willoughby Pub, Inc*., 2006 VT 54, ¶ 16, 180 Vt. 25; *Univ. of Vermont v. W. R. Grace and Co*. 152 Vt. 287, 289–90 (1989). Specifically, the claim accrues:

---

[9] See statute of limitations discussion *supra* Part V.

upon the discovery of facts constituting the basis of the cause of action *or* the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery. Thus, the statute of limitation begins to run when the plaintiff has notice of information that would put a reasonable person on inquiry, and the plaintiff is ultimately chargeable with notice of all the facts that could have been obtained by the exercise of reasonable diligence in prosecuting the inquiry.

*Kaplan v. Morgan Stanley & Co., Inc.,* 2009 VT 78, ¶ 7 (quoting *Agency of Natural Res. v. Towns,* 168 Vt. 449, 452 (1998)). Thus, this claim accrued to Defendants when they knew, or obtained facts triggering the duty of inquiry, whether Nancy had acquired the property while she was a trustee.

Defendants maintain that they did not know until 2007, when they received a trustee file that prompted them to do a title search, that Nancy had purchased the Property in 1982 while she was a trustee. It is undisputed that in 1993 Nancy disclosed to Defendants that she owned the two-thirds interest, though at that time she did not indicate when or how she had acquired it. She made this disclosure as part of her offer to the other beneficiaries to trade land Nancy owned in Brookline for the remaining one-third interest in the Property owned by the Trust. This offer offended Defendants and caused them to be mistrustful of Nancy. Plaintiffs argue that Defendants' knowledge that Nancy owned the two-thirds interest and that she had been a trustee since the creation of the Trust, when combined with their knowledge that she wanted to acquire the one-third interest and their resulting mistrust of Nancy, created a duty in 1993 that they inquire as to the circumstances of Nancy's ownership. The Court agrees.

Normally, the question of when the injury was or should have been discovered is left to the jury; however, it may be determined by the court as a matter of law where no reasonable fact finder could differ as to the result. *Kauffman v. State Farm Mut. Auto. Ins. Co.,* 857 F. Supp. 23, 25 (D.Vt. 1994). See also, *Orlyk v. Sessions, Keiner & Dumont*, Doc. No. 182-04 Ancv, 2005 WL 5895209 (Opinion & Order, Dec. 09, 2005)(Katz, J.) (("In the absence of disputed facts, the question whether a plaintiff knew or should have known of the injury and that it was wrongfully caused is a question of law, to be determined by the trial judge." (citing *Moll v. Abbott Laboratories*, 506 N.W.2d 816, 819 (Mich. 1993); *Wells v. Travis*, 672 N.E.2d 789, 792, (Ill. App. 2 Dist.,1996); *Griffiths-Rast v. Sulzer Spine Tech, Inc*., 2005 WL 2237635 (D.Utah Sept. 14, 2005)). When making such a determination on a summary judgment motion, the Court must view the facts in the light most favorable nonmoving party. Even by this standard, however, no reasonable jury could escape the conclusion that the state of Defendants' knowledge in 1993

13

makes them chargeable as to the easily discernable matters of record involving Nancy's purchase at the time she was a trustee.

Defendants claim that, until obtaining more detailed information about the Trust shortly before they filed their counterclaim, they were unaware of any possible significance between Nancy's role of trustee and her purchase of the two-thirds interest. The Court rejects this assertion of an innocent state of ignorance as lacking any objective credibility. Defendants admit they were upset upon learning that Nancy wished to claim the one-third interest in the Property held by the Trust, in exchange for a piece of property they considered of inferior value. Thus, at the time they rejected this proposition in 1993, having become suspicious of Nancy's motives and having learned at or about the same time that she had been both trustee and beneficiary since the Trust's creation, Defendants had every reason to inquire further as to the circumstances involving her acquisition of the other two-thirds interest.

By a simple review of the land records in 1993, Defendants would have discovered that Nancy purchased the property less than two years after William's death had caused the one-third interest to pass into the Trust. Neither Nancy, nor anyone else, acted to conceal from Defendants all the operative facts necessary to bring the challenge to her fiduciary duty which they eventually lodged fourteen years later. Rather, the facts were "hiding in plain sight," and if during their pique at her attempt to consolidate her title, Defendants did not assume that Nancy had become owner of the two-thirds interest while a trustee, they certainly should have undertaken the simple inquiry which would have confirmed what they must have surmised.

As with *Kaufmann* and *Orlyk,* there are no facts in dispute as regards Defendants' objective knowledge in 1993, despite their claim that they lacked both knowledge and any basis for further inquiry with respect to the accrual of their cause of action. The facts in the latter case are particularly instructive. Similar to Defendants' claims of ignorance here, Orlyk insisted that she had insufficient understanding or reason to challenge the provisions of her divorce decree with respect to pension benefits until bringing a malpractice action eighteen years later, claiming her divorce attorney failed to provide adequately for her retirement needs. *Orlyk v. Sessions, Keiner & Dumont*, Doc. No. 182-04 Ancv, 2005 WL 5895209. While acknowledging the possibility of plaintiff's subjective lack of information, the trial court could not conclude that she was entitled on that account to an extension of the statute of limitations under the "discovery rule".

It is undisputed that over the eighteen year period between the signing of the decree and the filing of plaintiff's suit, plaintiff make [sic] no inquiry with regard to the pension funds. While Plaintiff possessed the necessary facts to make an inquiry of the pension funds, she simply did not approach anyone to ask. We therefore conclude based on this undisputed fact that Plaintiff cannot rely on the discovery rule here.

*Orlyk*, 2005 WL 5895209.

Fundamentally, Defendants' plea here mirrors that of Orlyk, protesting that until consulting with counsel in connection with their 2007 counterclaim they had an insufficient legal awareness to appreciate the implications of Nancy's claimed dereliction of duty. Yet, this explanation misperceives the ambit of the discovery rule. "[T]he limitations period begins to run 'when the plaintiff has or should have discovered both the injury and the fact that it *may* have been caused by the defendant's negligence or other breach of duty.'" *Rodrigue v. VALCO Enters., Inc.*, 169 Vt. 539, 541 (1999) (mem.) (quoting *Lillicrap v. Martin*, 156 Vt. 165, 175 (1989))(rejecting claim that dram shop action could not have been filed until further development of evidence that defendants had served alcohol; plaintiff "need not have an airtight case before limitations period begins to run"); see also, *Galfetti v. Berg, Carmolli & Kent Real Estate*, *Corp.,* 171 Vt. 523, 525–26 (2000) (mem.) (deciding as a matter of law that the plaintiffs' claims were barred by the applicable limitations period when documents available at time created inquiry notice as to possible claim for negligent misrepresentation).

Sometime in 1993, Defendants became distressed at learning that Nancy owned a two-thirds interest in the Property, and was seeking the other third from the Trust. At about the same time, they became fully aware of the terms of the Trust, including Nancy's dual participation as both beneficiary and trustee. Any claim arising from their suspicions regarding Nancy's relationship to the property, and a possible conflict with her duties as trustee, accrued at that time. Thus, any such claim is barred by the statute of limitations having not been brought before the end of 1999.

b. *Breach of Fiduciary Duty— Two-Thirds Interest Claim*

Although Plaintiffs have met their burden to prove that this claim is barred by the statute of limitations, the Court addresses their additional arguments regarding the breach of fiduciary duty, since the duty imposed on Nancy as both a trustee and a beneficiary has been fully examined by the parties. Plaintiffs argue that they are entitled to summary judgment as well because Defendants have not produced any evidence to show (1) that Nancy breached the duty of

15

loyalty by making this purchase; (2) that Nancy breached her duty of care and skill by purchasing the property for herself rather than making a speculative real estate investment on behalf of the trust; and (3) that they suffered damages as a result of Nancy's actions.

Duty of Loyalty

The first question is whether Nancy breached her duty of loyalty as a trustee by purchasing the two-thirds interest in her individual capacity. Generally, the duty of loyalty requires a trustee to "administer the trust solely in the interests of the beneficiaries"— in other words, not to act in a manner that creates a conflict between the beneficiaries' interests and the trustee's personal interests. 14A V.S.A. § 802(a). The Vermont Trust Code adopts the "no further inquiry rule" so that any conflict of interest transaction by the trustee is automatically voidable by the beneficiaries, regardless of whether or not it was entered in good faith or is fair to the beneficiaries. 14A V.S.A. § 802(b) and Official Comment. However, this rigid bar against any conflict of interest transaction is a default rule that may be altered where the settlor approves a conflict of interest in the terms of the trust itself. *Id*. § 802 Official Comment; Restatement (Third) of Trusts § 78, cmt c (2); see also 14A V.S.A. § 105 (Section 802 duty of loyalty is not included on the list of code provisions that cannot be altered by the terms of the trust).

A common settlor-approved conflict is the conflict created by designating a trustee who is also a beneficiary of the trust. See 14A V.S.A. § 802, Official Comment; Restatement (Third) of Trusts § 78, cmt (c)(2).

> It is well established that a trustee may occupy conflicting positions in handling the trust where the trust instrument contemplates, creates, or sanctions the conflict of interest. The creator of the trust can waive the rule of undivided loyalty by expressly conferring upon the trustee the power to act in a dual capacity, or he can waive the rule by implication where he knowingly places the trustee in a position which might conflict with the interest of the beneficiaries.

*Dick v. Peoples Mid-Ill. Corp.* 609 N.E.2d 997, 1002 (Ill. App. 1993); accord 14A V.S.A. § 802, Official Comment.[10] When the settlor creates a conflict between the trustee and the trust, the "absolute limitation against self-dealing on the part of the trustee is modified, and the trustee will

---

[10] The Vermont Trust Code specifically dictates that it is to be supplemented by common law, including prior case law within the state and as well as more general sources including the Restatement. 14A V.S.A. § 106. Thus, in interpreting the Code, the Court will look first to Vermont common law. However, in the absence of Vermont case law on many of these issues, the Court will, as the parties have done, use the Restatement of Trusts and common law of other states in order to guide its interpretation.

not be penalized when he has acted in good faith and in a manner he believes was for the best interest of the trust." *Bank of Nevada v. Speirs*, 603 P.2d 1074, 1077 (Nev. 1979); see also *Dick*, 609 N.E.2d at 1002 (where a conflict is approved, there is no breach of duty unless the trustee has acted in bad faith, dishonestly, or has abused his discretion); Restatement (Third) of Trusts § 78, cmt c(2). The Court finds that this modified trustee-beneficiary duty of loyalty—to act fairly and in good faith—applies to Defendants' allegations of breach of loyalty by Nancy.

Defendants argue that they are entitled to summary judgment because the traditional duty of loyalty applies to this transaction, and breach is proven by Nancy's becoming co-owner of property with the trust without court approval or consent of the beneficiaries. Defendants assert that the only conflict approved in the terms of the Trust was that Nancy could accept trust distributions approved by two independent trustees. This narrow reading of the settlor-approved conflict ignores the language of the Trust itself. The Trust names Nancy as a trustee, and also as one of a number of beneficiaries to whom as trustee she has discretion to make distributions. By placing the trustee in a position so riddled with potential conflict, the settlor has impliedly approved the conflict and therefore, the less rigid duty of loyalty applies. See 14A V.S.A. § 802, Official Comment.

The duty of loyalty applies to all matters involving administration of the trust and trust property. Restatement (Third) of Trusts § 78, cmt a. There is also a duty imposed on trustees in transactions involving non-trust property, like the two-thirds interest at issue here. 14A V.S.A. § 802(e). In transactions involving property that is not a part of the trust, the trustee breaches the duty of loyalty if she takes, in her individual capacity, "an opportunity properly belonging to the trust." *Id.* To prevail on their breach of loyalty claim as to this transaction, Defendants must prove that (1) the chance to purchase the two-thirds interest was a trust opportunity and (2) that Nancy acted unfairly or in bad faith by taking the opportunity for herself. See *Green Mtn. Inv. Corp. v. Flaim*, 174 Vt. 495, 497 (2002) (party claiming breach must prove fiduciary relationship, breach of duty, and loss caused by breach); *Dick v. Peoples Mid-Ill. Corp.* 609 N.E.2d 997, 1002 (Ill. App. 1993) (where document approves conflict, person asserting breach has duty to show bad faith, dishonesty or abuse of discretion).

Even drawing all reasonable inferences in favor of the Defendants, they have failed to demonstrate a breach of the duty of loyalty by Nancy's purchase of the two-thirds interest. First, it has not been established that this purchase was a trust opportunity, and Defendants have offered no evidence to support such an inference. The trust opportunity doctrine is similar to the

17

corporate opportunity doctrine, requiring the Court to determine whether this was an investment "the trustee was expected to purchase for the trust."  14A V.S.A. § 802(e), Official Comment. Here, the Trust gives the trustees absolute discretion to purchase real property or to sell real property already in the Trust.  Yet, it does not mandate any specific action as to real property, nor does it provide any express direction about the two-thirds interest. Having acquired his one-third interest in 1979, William conceivably might have modified the Trust to provide direction as to the remaining two-thirds, but he did not.

The record is also devoid of evidence about the circumstances of the offer—whether it was initiated by Nancy or by the sellers, and whether the sellers understood Nancy's position as trustee with respect to the other one-third interest.  In any event, there can be no breach of duty if the Trust was financially unable to purchase the property.  See *Riley v. Rockwell*, 747 P.2d 903, 905 (Nev. 1987) (Generally, transactions where a trustee becomes co-owner with the trust should be discouraged, because of increased chance of self dealing, "*unless the trust clearly lacks the funds to make the purchase*." (quoting 9 G. Bogert, *Trusts and Trustees* § 543(d) (revised 2d ed. 1978))). [11]

In addition, the normal concerns about self-dealing when a trustee co-owns property with the trust are reduced here given that William Alden had already implicitly approved some conflict by making Nancy a trustee and a beneficiary. Cf.  *Bank of Nevada v.  Speirs,* 603 P.2d 1074, 1077 (Nev. 1979) (settlor-approved conflict in terms of trust giving part ownership to trustee and part to trust prevents trustee from being penalized so long as acting in good faith). Defendants make a general allegation that, throughout her time as trustee, Nancy was working to unfairly maximize her own benefit; however, they have not presented evidence that demonstrates any bad faith or unfairness underlying her purchase of the two-thirds interest.  As long as Nancy did not act unfairly and dishonestly, she did not breach her duty of loyalty.  In the absence of any evidence that she acted in bad faith, Defendants have not met their burden to establish that Nancy breached her duty of loyalty in purchasing the two-thirds interest.

Duty of Care

---

[11] The deed transferring the two-thirds interest to Nancy was dated February 6, 1982 and recorded February 18, 1982.  Defendants have not presented evidence that the Trust was funded and would have been able to purchase to the property at that time.  In fact, the only reasonable inference from evidence in the record is that the Trust was not funded until some time after February 18, 1982.  (See Def.s' Ex. 121 (letter dated Feb. 25, 1982, indicating Trust has not yet been funded); Def.s' Ex. 124 (Inventory and first account of Estate of William Alden, dated March 31, 1982, which still shows one-third interest as asset of estate).

18

Plaintiffs also argue that Defendants have not produced evidence to demonstrate that Nancy's purchase of the two-thirds interest was a breach of the duty of care. A trustee is required to administer the trust as a reasonable person would, and to invest and manage the trust assets as a reasonably prudent investor would, "by considering the purposes, terms, distribution requirements, and other circumstances of the trust." 14A V.S.A. §§ 804, 902. In satisfying these duties, the trustee must "exercise reasonable care, skill, and caution." *Id*. The trustee's conduct is to be judged based on the circumstances at the time of the action, "not with benefit of hindsight or by taking account of developments that occur after the time of the action or decision." Restatement (Third) of Trusts § 77, cmt a; see also 14A V.S.A. § 905 ("Compliance with the prudent investor rule is determined in light of the facts and circumstances existing at the time of the trustee's decision."); *Estate of Pew*, 655 A.2d 521, 543 (Pa. Super. Ct. 1994). Because the standard of prudence is based on the purposes and circumstances of a particular trust, at a particular time, whether the duty has been breached is necessarily a trust-specific inquiry.

Plaintiffs argue that given the purposes of the Trust—to provide primarily for Nancy, and then for the children during Nancy's lifetime—Nancy's decision against proposing putting $56,000 of Trust assets into a real estate investment was not a breach of the duty of prudent administration. Defendants dispute that the Trust was primarily for Nancy's benefit[12] and counter that there was a breach because she knew the Property was an appreciating asset and had a duty to invest in such an asset for the benefit of all beneficiaries.

By the terms of the Trust, the Trustees have authority to invest trust assets in real estate, even though such an investment would generally not be considered appropriate. The Court reads this provision as a statement about the broad discretion in investment decisions granted to the trustees by William Alden—it does not create a duty to invest trust funds in real estate. Read as a whole, the overarching purpose of the Trust was to provide for the "comfort, support, education, and happiness" of Nancy, James, Todd, Julia, Seth, and Cornelia. Trust funds may be used to assist the children specifically in their education, careers, as a means of travelling, and to aid them in purchasing homes. There is no requirement that the Trustee preserve and invest the principal for maximum growth, nor any evidence that William Alden intended the Trust to continue for generations to come.

---

[12] Even assuming the accuracy of Defendants' interpretation, it does not alter the Court's analysis.

To the contrary, the Trustees were granted absolute discretion to make distributions to any beneficiary, including the authority to distribute the entire principal to any beneficiary or beneficiaries at any time, even if such distribution terminated the Trust. Moreover, upon Nancy's death and when all children were over 25, the Trust was to be divided into shares for each child to be fully distributed to them by the time they turned 35, thereby terminating the Trust.

Given the settlor's intent that funds be available to provide for the comfort and happiness of his wife and children during their lives, there is scant substance to Defendants' argument that Nancy acted imprudently at the time. Even assuming the Trust had $56,000 available to invest in the purchase, the decision would have required either a speculative gamble that short-term gain might materialize, or the election of a long-term strategy involving a lengthy commitment of capital. Once one acknowledges that the latter alternative implicates consideration of carrying costs, including any potential development and marketing, the shortcomings of Defendants' retrospective critique become apparent. In any event, at the time this decision was made, as discussed previously, there is no evidence that the Trust was funded or had $56,000 to invest in real estate.

Defendants argue that they have demonstrated that Nancy breached the duty of care because she knew the Property was an appreciating asset and thought the two-thirds interest was an appropriate investment for herself. The evidence Defendants offer regarding Nancy's knowledge that the Property was appreciating is (1) a letter to Todd Alden from Attorney Brockelman on May 11, 2007, in which he states "I am not sure, but I believe the thought was the 66 acres of land in Williamstown had the greater potential for appreciation in value, and therefore, [the one-third interest] was allocated to the residuary trust"; and (2) an appraisal of the Property which Nancy commissioned in 1990.

Attorney Brockelman's uncertain memory that the property was believed to have the potential for appreciation is not proof that the land was appreciating, or that Nancy knew that it likely would when she acquired it. The question is what Nancy knew about the value of the land in 1982 when she purchased it— the fact that she had an appraisal of it done in 1990 is irrelevant to her knowledge in 1982. Likewise, the fact that Nancy considered the property a sound investment for herself does not mean it was an equally sound investment for the Trust. The prudence of a particular investment for the Trust must be judged by the purposes and

circumstances of the Trust (14A V.S.A. §§ 804; 902), which are clearly different from the personal circumstances that Nancy would have considered in making an investment for herself.

The Court finds that, in addition to being barred by the statute of limitations, Defendants have failed to present credible evidence on essential elements of their claim that Nancy's purchase of the two-thirds interest breached her fiduciary duties.[13]  Therefore, **SUMMARY JUDGMENT IS GRANTED IN FAVOR OF THE PLAINTIFFS, Estate of Nancy Alden, Seth Alden and Cornelia Alden, on the breach of fiduciary duty claims in Count One relating to the two-thirds interest.**

### 2. Trust Distributions

Throughout the counterclaim, Defendants allege that distributions to Nancy from the Trust were breaches of fiduciary duty by both Nancy and the co-trustees. (See Counts 1, 2, and 4).  Specifically, Defendants are concerned with the distribution of the Trust's one-third interest in the Property to Nancy in 2001 and an increase in monthly distributions to Nancy beginning in 2002.[14]  The material facts relevant to these claims are as follows.

Under the terms of the Trust, the Trustees have absolute discretion, which they are instructed to exercise liberally, to make distributions to any beneficiary for his or her comfort, support, education, and happiness.  The Trustees are not bound to consider the financial circumstances of the beneficiaries or to equalize distributions among the beneficiaries—in fact they are authorized to make distributions to any beneficiary at the exclusion of others.  The only apparent restriction on distributions is that they must be approved by a majority of the three trustees.  Though not expressly mandated in the Trust, distributions to Nancy had to be approved by the corporate trustee and the other individual trustee because State Street Bank would not allow Nancy to vote on or approve distribution of Trust assets to herself.

On March 2, 2000, Nancy requested distribution of the one-third interest in the Property, as well as $300,000 for its development.  She asked that the distribution be made before a

---

[13] Plaintiffs also assert that Defendants cannot succeed on this claim because they cannot demonstrate any damage to the assets of the Trust by the alleged breach. Had they established breach, Defendants would also have to prove damages to succeed on a breach of fiduciary duty claim.  *See Green Mtn. Inv. Corp. v. Flaim,* 174 Vt. 495, 497 (2002) (no error in declining to instruct jury on breach of fiduciary duty claims where party claiming breach had not presented any evidence of damages).  In light of its holding that there was no breach of fiduciary duty in this transaction, the Court need not reach the damages issue.

[14] As the parties did at oral argument, the Court will consider these distribution claims together because they involve many of the same issues.

reformation action was filed to correct the scrivener's error, out of concern that Defendants, due to their now acrimonious relationship with Nancy, might take the opportunity once the Trust was before the court to interfere with Trust arrangements in order to cause Nancy "economic harm." Nancy did not disclose this request to the Defendants.

Before it would approve the distribution, State Street Bank, requested detailed financial information from Nancy, explaining that "as Trustee we have an obligation, a fiduciary responsibility to consider all the beneficiaries of this trust." (Pl.s' Ex. 25). Nancy provided financial documentation and, on April 18, 2000, the corporate trustee voted to approve distribution of the Property to Nancy but denied her request for funds to develop the property. However, the distribution was not formally approved until November or December of 2001, after George Smith was appointed to the vacant third trustee position, because of the need for a majority vote of disinterested trustees. The Property was officially transferred to Nancy by Fiduciary Deed, signed by all three trustees, on December 3, 2001. State Street Bank and George Smith believed that this distribution was appropriate because the property was a non-income producing asset that was actually an expense to the trust. Defendants dispute the independence of these trustees but not their reasoning.

The transfer of the Property to Nancy was included on the 2001 annual trust accounting, which Defendants received but did not object to. The Trust terms require that any objection to items on the accounting be made within sixty days of the mailing of the account, and that "[i]n the absence of such objection all beneficiaries, whether or not in being or ascertained, shall be barred from objecting thereto." Despite the accounting, Defendants assert that they were not aware of the distribution until April 8, 2003. However, they still took no action against Nancy until May 2007 when they filed the present claims. Defendants maintain that they had not discovered that they had a cause of action in 2001 or 2002 because Nancy had failed to provide them with material facts, specifically the lack of independence of George Smith and State Street Bank.

Defendants assert that State Street was not an independent trustee because it had made an agreement with Nancy to approve certain distributions to her in exchange for her dropping any attempt to force State Street's resignation. Defendants offer a variety of communications by Attorney Newman between April 2000 through July 2001 regarding the removal or threatened removal of State Street as the corporate trustee. Particularly, Defendants say that this agreement is evident the context of a memorandum from Attorney Ron Morgan to Attorney Newman.

22

Attorney Morgan's memorandum, which analyzes the IRS transfer for value rule in the context of funding Nancy's life insurance trust states: "I believe the easiest way to avoid the 'transfer for value' issue would be to have something in writing from State Street indicating their unconditional agreement to make additional discretionary distributions to Nancy in exchange for her dropping any efforts to have them removed as trustee." Plaintiffs deny that there was any agreement between Nancy and State Street Bank and that Nancy ever communicated to State Street Bank her desire to remove them as trustee.

Defendants also claim that George Smith was not an "independent" co-trustee, again citing numerous communications which they say could permit a trier of fact to find that Smith colluded with Nancy to approve her distribution requests. In pertinent summary, those facts are that George Smith was a long time business colleague of Nancy's lawyer, Brian Quinn and that Smith had agreed prior to his appointment to vote with Nancy. Defendants point to an email Attorney Newman sent Nancy on July 11, 2001, in which he stated:

> The only subtext (not to be discussed with State Street or any one else who will communicate with them) is that *once we have a third trustee, you will vote with the new trustee to spend the fees to handle the scrivener's error and reform the trust.* In particular, you and the new trustee will order State Street to pay the costs of Brian's court action, my past work, Mr. Hammer's work, and the retainer for the attorney who will handle the reformation suit. If State Street resists, then I will send them my letter demanding their resignation.

(emphasis added).

And in a fax to Key Bank on September 10, 2001, Newman stated:

> Since 1999, I have been attempting to sensitize State Street Bank to this problem, but it has refused to deal with the above issues in any meaningful way. *It is very possible that, at a trustees meeting September 12th, 2001, two out of three of the trustees will vote to revoke State Street Bank as co-trustee and replace it with a new corporate fiduciary. . . .* As Nancy Alden's Attorney, I am looking for a corporate trust department that will be able to take over and administer the trust in an appropriate fashion.

(emphasis added).

Finally, Defendants note that Smith voted to approve these distributions at his first trustees meeting, just days after his appointment. In response, Plaintiffs offer an affidavit of George Smith attesting to his independence, that he was not aware of Nancy's pending requests when he agreed to serve as trustee, nor did he agree to approve any of them if prior to his appointment.

On September 20, 2001, Nancy requested that the Trustees increase her monthly distributions by $2,800. Since 1982, Nancy had received monthly distributions from the Trust, the amount of which was determined by the two co-trustees based on Nancy's needs. Initially, the distributions were $4,000 a month; this amount was increased several times to $6,500 a month by December 2001. Nancy's 2001 request for an increased distribution was to cover a $33,000 annual increase in her life insurance policy premium, insurance which was intended to pay any taxes imposed on her Estate as a result of the scrivener's error. Nancy did not disclose this request for increased distributions to the other beneficiaries.

In January 2002, co-trustees George Smith and State Street Bank approved the $2,800 a month increase, believing it was necessary to offset the potential estate tax consequences to Nancy and to carry out William Alden's intent to keep the Trust assets out of Nancy's estate. Nancy did not vote on this distribution. The increased monthly payment to Nancy was reported on the 2002 accounting, which Defendants received and did not object to. Again, Defendants claim they did not object because material facts that would have caused them to contest the distribution were concealed from them.

*a. Statute of Limitations—Trust Distributions*

Plaintiffs assert that they are entitled to summary judgment because Defendants' current objections to distributions are barred by the terms of the Trust, which require objections to be made within 60 days of when the accounting is mailed. Defendants insist the sixty day period for objection cannot be used to bar their breach of fiduciary duty claims, especially where Nancy concealed material facts from them so that they did not have sufficient information upon receipt of the accountings to trigger an objection

The Court will apply the sixty day period in the Trust as the statute of limitation for objections to distributions from the Trust.[15] Essentially, Defendants object to these distributions on the ground that they were the result of a breach of fiduciary duty. The Trust specifically requires that objections to distributions, regardless of the basis of the objection, be made within sixty days of the accounting being mailed or be forever barred. Each of the challenged distributions was reported on accountings for the years they were made. Defendants acknowledge receipt of both the 2001 and 2002 accountings, but they did not make any objection to the distributions at that time. In fact, they did not make any formal objection to these

---

[15]See statute of limitations discussion *supra* Part V.

distributions until May 24, 2007, when they filed the counterclaim—clearly beyond the sixty days permitted in the terms of the trust.

It is undisputed that the 2001 and 2002 accountings listed these distributions to Nancy and that they were received by the Defendants. The purpose of an annual account is to keep beneficiaries reasonably informed so that they can protect their interests. See 14A V.S.A. § 813, Official Comment. Defendants' claim that they were not aware of the property distribution until 2003—despite its being plainly listed on the 2001 accounting—is unavailing. Beneficiaries have a responsibility to review those accountings in order to protect themselves. Thus, Defendants are chargeable with knowledge of the distributions listed on the accounting from the date it was received.

Defendants' assertion that they did not have material facts necessary to challenge the monetary distributions when accountings were received is equally unpersuasive. Defendants' knowledge that the distributions had been made, combined with their distrust of Nancy, gave them sufficient reason to object to the distributions upon receipt of the accounting. See *Cohen v. State Street Bank and Trust Co.,* 893 N.E.2d 425, 428 (Mass.App.Ct. 2008) (receipt of accountings provided knowledge of harm at the hands of the fiduciary sufficient to trigger the statute of limitations.) When Defendants received the accounting showing distribution of the one-third interest, they already knew that Nancy wanted to obtain that property because she had approached them about it in 1993. At that time, Defendants felt that Nancy had misrepresented the value of the property to them; certainly the same concern would have arisen when they saw that Nancy had succeeded in acquiring the Trust's one-third interest.

Defendants had enough information upon receipt of the accountings to trigger a duty to inquire further into the trustee's actions approving the distributions.[16] Inquiry at the time the accountings were received into the circumstances of the distributions would have produced the same information Defendants' obtained when they finally did begin to inquire in 2007. Yet this inquiry was not made—in fact, it appears that Defendants did not become concerned about these distributions or Nancy's behavior as trustee until after Nancy had filed this lawsuit naming them as defendants. The Trust's explicit limitation on objections to distributions cannot be set aside simply because Defendants failed to take timely steps to investigate the distributions.

Likewise, the Court is not convinced that Nancy fraudulently concealed any facts which would require a tolling of the statue of limitations. See 12 V.S.A. § 555. Defendants bear the

---

[16] See statute of limitations and "discovery rule" discussion, supra Part V.1.

burden of proving concealment and fraudulent intent to prevent discovery of facts that would give rise to cause of action. *Alexander v. Gerald E. Morrissey, Inc.* 137 Vt. 20, 24 (1979). Defendants contend that Nancy prevented them from discovering this cause of action by fraudulently concealing her request for distributions, the value of the property to be distributed, her plans for those distributions, and her so-called "plan to obtain control" of the Trust, all of which she had a duty to disclose to the beneficiaries.

Defendants construe the trustee's duty to disclose described in 14A V.S.A. § 813 and Restatement (Third) Trusts § 82 too broadly. These sections impose a duty to disclose information about trust assets to the beneficiaries, to the extent necessary for the beneficiaries to protect their interests. 14A V.S.A. § 813(a) ("A trustee shall keep the qualified beneficiaries . . . reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests.") It is not a blanket requirement to inform the beneficiaries of every aspect of administration of the trust, but only where there is a significant transaction that will affect their interests or a request for information from the beneficiaries. See 14A V.S.A. § 813, Official Comment; Restatement (Third) Trusts § 82, cmt d.

This duty does not require Nancy or the other trustees to inform the beneficiaries that she requested a distribution from the Trust. Distributions made under this Trust are entirely discretionary—there is no guarantee of distribution to any beneficiary. In fact, the trustees have authority to make distributions to one beneficiary at the exclusion of others. They are not expressly required to advise the other beneficiaries of requests for distribution.

Further, as long as the trustees determined that the distribution was appropriately made for the beneficiary's "comfort, support, education, and happiness," there is no requirement for the purpose of the request to be disclosed to the other beneficiaries. If the settlor had wished to require such advance disclosure, and the possible jockeying between beneficiaries that would inevitably ensue, he would have done so explicitly. Importantly, Nancy's failure to make the disclosures about which Defendants complain did not deprive Defendants of their opportunity to challenge the distributions as soon as they were reported on the accounting. The accounting provided Defendants with all the disclosure which the Trust required, and all that was reasonably necessary for the protection of their interests. If Defendants had inquired about the distributions, the trustees' duty to inform would have required them to provide that information. 14A V.S.A. § 813, Official Comment. In the absence of such an inquiry, the trustees did not breach their duty to disclose.

Finally, Defendants insist that Nancy concealed her plan to obtain control of the Trust, which involved her influencing both State Street Bank and George Smith to approve these distributions to her. Nancy's concealed coercion of the co-trustees is a recurring theme in Defendants' motion, offered as justification for their delay in bringing any claims against Nancy until 2007. However, Defendants have failed to create a triable issue of disputed fact as to their claim of a lack of independence on the part of either trustee.

The Court has reviewed all the communications Defendants cite as evidence of an agreement between Nancy and State Street regarding these distributions. The memorandum from Attorney Morgan is not evidence of an agreement between Nancy and State Street; it is merely a suggested strategy for correcting the Estate Tax Problem. Other documents show that Attorney Newman felt State Street had previously breached its fiduciary duty to provide distributions for Nancy's comfort and support and that, as a result, he was considering requesting their resignation. However, this is only evidence of strategies Attorney Newman was considering in his representation of Nancy, not that Nancy ever actually threatened State Street with a request for its resignation or that Nancy and State Street actually made an agreement regarding these distributions. State Street's subsequent approval of the land and life insurance distributions supports no inference of collusion, since they were plainly within the broad discretion allowed by the Trust, and supported by plausible justifications.

The evidence for Defendants' challenge to Smith's independence is just as flimsy. It is undisputed that Smith was a longtime colleague of Attorney Quinn but that fact was disclosed to Defendants by Attorney Quinn himself. It also appears that Attorney Quinn originally identified three qualified individuals as potential trustees before ultimately recommending George Smith. Attorney Newman offered to provide the Defendants with information regarding each of the proposed trustees, and encouraged them to consult with their own attorneys if they wished.

Moreover, the communications Defendants cite hardly qualify as smoking guns indicating an agreement that Smith would vote with Nancy—none indicates that George Smith will be the new trustee that Nancy will vote with. The backdrop of these communications is Attorney Newman's belief that State Street Bank violated its duties as trustee, a conviction leading him to advise Nancy that the Bank's resignation might be required. Taken together, these communications indicate some anticipation that a new trustee would vote with Nancy either to force State Street to fulfill its duties or to resign, but fall well short of proving that the new trustee has preapproved Nancy's requested distributions.

27

Smith's voting to approve these distributions is likewise no evidence of a pre-appointment agreement. These distributions were not approved until November 2001 at the earliest, several months after Smith's appointment.[17] Without sufficient evidence of a contrary intent, it is reasonable to infer that he voted in favor of them because he believed they were proper under the terms of the Trust. Defendants have not met their burden to establish a lack of independence in the actions of either trustee, or to produce credible evidence to rebut Plaintiffs' evidence on this claim. *Endres v. Endres*, 2008 VT 124, ¶ 10; *Poplaski v. Lamphere*, 152 Vt. 251, 254-55 (1989).

Importantly, the core aspect of the Court's analysis of Defendants' objection to the distributions does not turn on the sufficiency of the evidence of Nancy's plan to obtain control. Even if the evidence of such a plan had been robust, Defendants have not shown that it prevented them from making an objection within the sixty day period mandated by the Trust. Defendants had all necessary information upon receipt of the accounting to make an objection at that time. Indeed, the short period for objections, considered together with the broad discretion granted to the trustees in making distributions between beneficiaries, can only be interpreted as a manifestation of the settlor's intention to avoid exactly the type of protracted, expensive and divisive proceeding represented by Defendants' late-filed counterclaims here. Given their failure to object within sixty days, Defendants' present challenges to the distribution of the one-third interest and insurance policy premium distributions are barred. **Summary Judgment is GRANTED IN FAVOR OF THE PLAINTIFFS, Estate of Nancy Alden, Seth Alden and Cornelia Alden, on the breach of fiduciary duty claims in Counts One, Two and Four relating to Trust distributions to Nancy.**

### 3. Reformation Action

By Count 3 of the counterclaim, Defendants allege Nancy breached her fiduciary duty of care by pursing a reformation action in Massachusetts as an attempt to correct scrivener's error. Nancy first learned of the scrivener's error in February 1994, by a letter from attorney David P. Callahan. Attorney Callahan advised Nancy of the potential estate tax consequences of the

---

[17] Defendants seem to imply, based on an email the Corporate Trustee sent the other Trustees "following up on our discussion of 9/19," that these distributions were approved by Smith just seven days after his appointment. (Def.s' Ex. 81). However, the plain language of the email addresses actions taken by State Street as follow up to that meeting, not what was done at the meeting, and Defendants admit elsewhere in the facts that the distributions were not approved until later in 2001and early 2002.

scrivener's error and recommended that she change her estate plan to direct that assets from her personal estate would not be responsible for estate taxes resulting from that error, which she did by amending her revocable trust and executing a new will on August 16, 1994.

On June 18, 2001, Attorney Newman sent a letter to Defendants and James Alden introducing himself as the attorney Nancy had hired, explaining the scrivener's error and its tax consequences to the trust, and the proposed solution: that the Trust file a reformation action in Massachusetts in order to correct the error. On July 13, 2001, Attorney Newman sent a follow up letter explaining that he could not represent Defendants or James Alden in the reformation action because of a potential conflict between their interests and Nancy's.

The trustees retained the law firm of Palmer & Dodge of Boston, Massachusetts, to bring the reformation action on behalf of the Trust. Defendants dispute whether the trustees actually selected the firm or whether it was retained by Attorney Newman. Proceeding on the advice of attorneys, the trustees filed the action in Massachusetts with the three trustees as plaintiffs. Todd and Julie, together with the other four beneficiaries and the IRS, were named as defendants. The Trust expressly permits the trustees to retain lawyers and other professionals, and to delegate trustee duties and powers to them for as long as the trustees see fit.

The trustees also approved the use of trust funds for Defendants to retain independent counsel so that they could be confident that the reformation action was appropriate, and communicated this offer to Defendants. The record does not indicate whether Defendants took advantage of this offer. However, Defendants maintain that the reformation action was inappropriate because Attorney Newman and Attorney Quinn knew that a reformation action in Massachusetts would likely be unsuccessful since the terms of the trust are governed by Vermont law. In support of this contention, Defendants cite communications among multiple attorneys between 1999 and 2002 debating the proper jurisdiction in which to bring the action.

The most recent of these communications is a letter dated December 20, 2002 from Palmer & Dodge to the trustees, indicating that the attorneys at Palmer & Dodge, as well as Colin Korzec, counsel for State Street Bank, had concluded that Massachusetts was the appropriate jurisdiction in which to bring the action. On July 11, 2005, the Massachusetts Supreme Judicial Court declined to reform the Trust, concluding that because the terms of the Trust were governed by Vermont law, any reformation by a Massachusetts Court would be futile.

On April 23, 2001, Nancy entered a tolling agreement with the law firm that caused the scrivener's error, preserving malpractice claims against the firm. This agreement protects the

interest of Nancy, Seth, and Cornelia—it does not include Defendants, James Alden, the Trust or the co-trustees. The agreement tolls the statute of limitations from the date of the agreement, April 23, 2001, but does not protect against any statute of limitations defense that may have arisen before that date.

Plaintiffs argue that this claim regarding the reformation action is time-barred, and, even if not, that there was no breach of fiduciary duty because Nancy, together with the co-trustees, disclosed the proposed reformation action to the other beneficiaries and relied on the advice of their attorneys to bring the action in Massachusetts. On the other hand, Defendants assert that it is not time barred and that Nancy did breach her fiduciary duty because she knew the Massachusetts action would not succeed and she did not disclose all litigation risks to the beneficiaries.

*a. Statute of Limitations—Reformation Action*

To the extent this claim alleges that trust funds were misspent on a reformation action in Massachusetts, they must be considered objections to distributions from the Trust, subject to the sixty day limitation period. The record contains no evidence that Defendants made any objection to the distribution of attorney fees between June 2001, when they were advised of the need for a reformation action, and July 2005, when the Massachusetts Supreme Judicial Court entered a final order on the case. Acknowledging that the record lacks any accounting that provides clear notice of the disbursement of attorney fees for the reformation action,[18] the Court concludes nevertheless that Defendants must have been on at least inquiry notice of such disbursements as a result of the notice that the action would be filed, and the subsequent disclosure of its rejection by the Supreme Judicial Court. As named parties to the reformation action, Defendants would have received the Court's final order. Thus, any viable challenge to distributions made in support of the reformation action expired, at the latest, sixty days after Defendants received notice of the final order.

Though Defendants' failure to object within the time allowed by the Trust entitles Plaintiffs to summary judgment, as with the breach of fiduciary duty claim discussed above in connection with the Property, the Court will address Plaintiffs' other independent grounds for the same relief. Because Defendants have adduced virtually no evidence to show that Nancy

---

[18] There is only one accounting provided in the record, the 2001 accounting. (Pl.s' Ex. 30). This account does not itemize attorneys' fees specific to the reformation action.

breached a trustee's fiduciary responsibility, or duty to disclose, their claims are subject to summary judgment on those grounds, as well.

### b. Breach of Fiduciary Duty—Reformation Action

Plaintiffs say they are entitled to summary judgment on the reformation action claim because Defendants have not produced evidence sufficient to establish that Nancy's conduct surrounding the reformation action was a breach of the duty of care or duty to disclose. The Court agrees that neither Nancy, nor the co-trustees, breached their duty of care by pursing a reformation action in Massachusetts.

The Trustees are required to act prudently in their administration of the Trust; that is, as a reasonable person would act in light of the purposes, terms, and circumstances of the Trust. 14A V.S.A. § 804. In doing so, the trustees must exercise reasonable care, skill, and caution. *Id*. Prudent administration also requires the trustees to seek the advice of trained professionals where a decision requires information beyond the trustees' expertise. Restatement (Third) of Trusts § 77, cmt b. Trust administration often gives rise to complex legal questions which a lay person would not be qualified to handle. Where such questions arise, a prudent person would seek the advice of a legal professional. Seeking and relying on the advice of counsel on complex legal matters is evidence of prudence in administration of the Trust. Restatement (Third) of Trusts § 77, cmt b(2).

In this case, the Trustees were confronted with an unexpected legal problem (the scrivener's error) that had the potential to significantly damage the Trust assets. In response, Nancy first sought advice of her Vermont attorney, Brian Newman who came to the conclusion that a reformation action should be brought in Massachusetts. The trust retained its own attorneys, Palmer & Dodge, who also concluded that Massachusetts was the proper jurisdiction in which to pursue reformation. Counsel for co-trustee State Street Bank concurred that Massachusetts was the proper jurisdiction.

Defendants raise no serious question as to the prudent approach taken by the trustees in seeking reformation of the Trust. The trustees cannot be faulted for assenting to the strategy, recommended by three different attorneys, of bringing the case in Massachusetts. Whether a trustee's actions were prudent is to be judged in light of the circumstances at the time of their decision, not with the benefit of hindsight. Restatement (Third) of Trusts § 77, cmt a; *Estate of Pew*, 655 A.2d 521, 543 (Pa. Super. Ct. 1994). At the time, the trustees were aware that leaving the scrivener's error uncorrected could have serious financial consequences for the Trust, and

31

that Nancy resigning as trustee would not avoid those consequences. They had also been advised that the law was unclear as to which jurisdiction the suit should be filed in, but three attorneys concluded that filing in Massachusetts was the best course of action. Nancy cannot be charged with knowledge that such an action would fail, where multiple attorneys agreed this action was proper.[19] Nancy acted as a prudent person would by seeking the advice of counsel and relying on that advice to bring the reformation action in Massachusetts.

Likewise, the Court does not find a breach of the duty to disclose in any action by Nancy relating to the reformation action. The duty to disclose requires the trustees to keep the beneficiaries "reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests." 14A V.S.A. § 813(a); Restatement (Third) of Trusts § 82(1). Here, the Trustees satisfied that burden by advising Defendants of the scrivener's error, its potential to damage their interests, and the proposed solution. Perhaps most importantly, the trustees took affirmative steps to ensure the beneficiaries had enough information to protect their interests by offering to pay for Defendants consultation with their own attorneys to satisfy themselves that the reform action was necessary and proper. Any failure to advise the beneficiaries of litigation risks of a Massachusetts action does not amount to a breach of duty to inform the beneficiaries, especially where the trustees have provided the beneficiaries an opportunity to make their own investigation of the proper legal strategy to resolve the error.

Defendants also claim that Nancy breached her fiduciary duties with respect to a tolling agreement preserving a malpractice suit against the scriveners of the Trust. Specifically, they say that Nancy breached her duty of care by failing to enter the agreement before the statute of limitation on that claim had run. They also assert that Nancy breached her duty of loyalty by failing to protect the Trust and the Defendants in the tolling agreement, instead preserving claims only on behalf of herself, Seth and Cornelia.

---

[19] Defendants attempt to attribute such knowledge to Nancy by claiming that Attorney Newman was aware a Massachusetts action would fail. In support, Defendants point to a 1999 letter from Attorney Newman to counsel for State Street Bank in which he says "I understand . . . that the Massachusetts Supreme Judicial Court is no longer inclined to save Trustees in Nancy's position from defective drafting of estate planning scriveners." (Def.s' Ex. 93). This one line of the letter Defendants cite hardly supports the conclusion that Nancy or her attorney knew a Massachusetts action would fail. It appears quite likely that the common law was more favorable when the trustees elected to seek declaratory relief, since Attorney Newman revised his opinion in 2001 to recommend a reformation in Massachusetts and noted at that time that the Supreme Judicial Court had recently issued a decision in a similar reformation action, with a favorable result.

The duty of care argument is moot because the statute of limitations for a legal malpractice claim against the scriveners had not run when the tolling agreement was executed on April 23, 2001. A legal malpractice claim must be brought within six years of the date the injury is discovered. *Fritzeen v. Gravel,* 2003 VT 54, ¶ 8, 175 Vt. 537. In this case, even though Nancy may have learned of potential injury to the Trust in 1994 when she was first advised of the scrivener's error, there was no actual injury until the Trust paid attorneys fees for work on the scrivener's error. The record is unclear as to when attorneys' fees were first paid, but, resolving doubts in favor of Defendants, the Trust could have paid such fees as early as 1999. (See Def.s' Ex. 93 (letter from Attorney Newman proposing a solution to the scrivener's error)). This is within two years of Nancy securing the tolling agreement, well within the applicable statue of limitations.

Defendants' claim that Nancy breached her duty of loyalty by failing to include the Trust and the Defendants in the tolling agreement also fails. There is no evidence that Defendants have attempted an action against the scrivener that failed because they were not protected by the tolling agreement. There is no indication that Nancy, Seth, or Cornelia have sued the scrivener's under the authority of the tolling agreement and recovered damages that should have been reimbursed to the Trust. In the absence of any damages from the failure to include Defendants on the tolling agreement, they cannot succeed on their claim that this failure was a breach of fiduciary duty.

**Summary Judgment is GRANTED IN FAVOR OF THE PLAINTIFFS, Estate of Nancy Alden, Seth Alden and Cornelia Alden, on the breach of fiduciary duty claims in Count Three relating to the Massachusetts reformation action.**

### 4. Fraud in Appointment of George Smith

The fraud count, Count Seven, was added by amended counterclaim on December 22, 2008. Defendants allege that, in the course of nominating George Smith as trustee, Nancy intentionally misrepresented his independence and failed to disclose that she had distribution requests pending at the time of his appointment, with the intent that Defendants would rely on her statements and approve Smith as trustee, that they did in fact rely on these misrepresentations, and were thus damaged by the resulting distributions to Nancy. Defendants seek to hold Seth and Cornelia liable as transferees of the assets Nancy fraudulently obtained from the Trust. The facts related to

33

this count are co-extensive with Defendants' similar challenge to the distributions based on Smith's alleged lack of independence, and compel a similar conclusion.

In the course of her trusteeship, Nancy retained the services of Massachusetts attorney Brian Quinn and Vermont attorney John Newman, to assist her with Trust issues. In March 2000, Nancy advised Attorney Newman that she wished to pursue the following actions regarding the Trust:

1. extricating the land portion from the Trust assets so I can commence development of the same
2. reformation of the Trust to be correctly drawn
3. increasing my annual income to 5% of principal value
4. seeking damages for 20 years of not paying me 5% income (vs actual 2.4% payout) . . .
7. considering moving the Trust to John Jones at People's Bank.

(Def.s' Facts ¶ 99). Defendants note that Nancy did not disclose her intentions to accomplish these things to Defendants.

Attorney Newman believed the individual trustee vacancy, left by Ed Greaves resignation in 1999, needed to be filled in order for the Trust to bring a reformation action to cure the scrivener's error. Attorney Newman sent a letter to Defendants and James Alden on June 8, 2001, informing them of the scrivener's error and the proposed reformation action and explaining that it would be necessary to fill the trustee vacancy before the reformation action could be brought. The letter proposed that a temporary trustee be appointed until reformation could be accomplished, and then that trustee would step down in favor of Julia Alden Dee.[20]

Attorney Newman sent another letter on August 17, 2001, proposing George Smith as the temporary co-trustee. Attorney Quinn also wrote to Defendants and James Alden assuring them that none of the Plaintiffs had had any dealings with Mr. Smith but disclosing that Attorney Quinn had known Smith professionally for twenty-five years and that he was a person of good judgment, intelligence, and integrity.

Attorney Quinn's letter included an assent and stipulation to be signed by each of the beneficiaries for filing with the petition to appoint a new trustee. Under the terms of the Trust, the Berkshire Probate Court had authority to appoint a successor trustee, without the consent of the beneficiaries. Attorney Quinn indicated that the purpose of the assent was to ensure that Smith was appointed as temporary trustee only, and to stipulate that, once reformation was accomplished, Julie would replace Smith as trustee. Attorney Quinn noted that without the

---

[20] Julie was not immediately nominated as trustee because, until the Trust was reformed, doing so would create the same general power of appointment and estate tax problem for Julie as it had for Nancy.

stipulation, the probate court would simply decide whether or not to appoint Smith, with no expectation that he would resign in the future. Nancy, Seth, Cornelia, James and Julie signed the assent and stipulation—Todd did not.

On September 12, 2001, the Massachusetts Probate Court, Berkshire Division, did appoint George Smith as successor trustee. Defendants did not appeal this decision, though in April 2003 Todd did object to Smith serving as Trustee because of an alleged conflict of interest—that Smith was recommended by Nancy's attorney and lived in same small town as Nancy.

Before being appointed as trustee, Smith had not met Nancy, nor did he know any members of the Alden family. However, he did meet with Attorney Quinn who told him about the Estate Tax Problem. At that time, Nancy had already made a request to the corporate trustee for distribution of the one-third interest in the Property and to bring a reformation action. Plaintiffs assert that Smith did not agree to approve any of the requests prior to his appointment. Defendants dispute this and maintain that George Smith was not an "independent" co-trustee. [21]

### a. Statute of Limitations-Fraud Claim

This common law fraud claim is subject to the general six-year statute of limitations for civil actions. 12 V.S.A. § 511; *Lodge at Bolton Valley Condo. Ass'n v. Hamilton,* 2006 VT 41, ¶¶ 3, 10. Defendants claim that they had no knowledge that Smith was not independent or that Nancy had distribution requests pending at the time of his appointment until June 2, 2008, when they received Attorney Newman's file in discovery on this case. The undisputed facts reveal that Defendants did have some concern regarding Smith's independence in 2003, as indicated by Todd Alden's letter to State Street Bank on April 9, 2003. Nevertheless, even if a claim accrued to Defendants in April 2003, they were still within the six year statute of limitations when the fraud claim was added in December 2008.

### b. Fraudulent Misrepresentation and Concealment

Plaintiffs assert they are entitled to summary judgment because Defendants have failed to establish multiple elements of the fraud claim. Defendants insist that the undisputed facts do establish the required elements for fraud.

The essential elements of a fraud claim are (1) intentional misrepresentation of a material fact; (2) made with the intent that another will rely on the misrepresentation; (3) that they do act in reliance and (4) are thereby harmed. *Lewis v. Cohen,* 157 Vt. 564, 568 (1991) (citing *Silva v.*

---

[21] For specific facts alleged to support lack of independence see *supra* Part V.2 .

*Stevens,* 156 Vt. 94, 102 (1991)). Fraudulent misrepresentation can be accomplished affirmatively by false statement or by the concealment of facts by one who has a duty to disclose those facts. *Sutfin v. Southworth,* 149 Vt. 67, 69–70 (1987). The duty to disclose arises out of a special relationship of confidence or trust—like the fiduciary relationship between trustee and beneficiary. *Id*. at 70. The party alleging fraud has the burden of proving each of the elements by clear and convincing evidence. *Lewis,* 157 Vt. at 571. The absence of any one element prevents the party from prevailing on a fraud claim. *Id*. at 568 (noting that the Court could simply affirm without reaching merits of appeal because, at trial, plaintiffs had failed to prove two elements of fraud but they only challenged the conclusion as to one of these elements on appeal).

In this case, Defendants' fraud claim falls short on two elements: fraudulent misrepresentation and damages. Defendants claim that Nancy intentionally misrepresented Smith's independence and concealed her pending requests for distribution at the time Smith was being appointed. As the Court determined above, Defendants have not produced sufficient evidence from which, in the absence of speculation, a jury might conclude that Smith was not independent. See discussion *supra* Part V.2.b. In the absence of any evidence that he was not independent, there can be no misrepresentation of that fact.

Similarly, in order to establish that Nancy fraudulently concealed her pending requests for distribution, Defendants must demonstrate that Nancy had a duty to disclose those requests. As discussed previously, a trustee's duty to disclose requires her to inform the beneficiaries of information about trust assets necessary to protect the beneficiaries' interests—it does not require the trustee to inform the beneficiaries of every aspect of administration of the trust or every request for distribution made to the trustees. See 14A V.S.A. § 813, Official Comment; Restatement (Third) Trusts § 82, cmt d. Nancy did not have a duty as trustee to inform the other beneficiaries that she had requested distributions.

Perhaps recognizing this, Defendants argue that Nancy also had a common law duty to disclose the pending requests, separate from her duty to disclose as co-trustee, because she had superior knowledge of facts surrounding the Smith appointment. While superior knowledge can give rise to the duty to disclose (*Sutfin v. Southworth,* 149 Vt. 67, 70) (1987)), the Court is not convinced that disclosure of any pending distribution requests were material to the issue of Smith's appointment. Defendants have not provided any evidence that supports their argument that getting the distributions approved was Nancy's secret motive for appointing a trustee.

36

The letters and emails Defendants offer as evidence of collusion refer to the new trustee voting with Nancy to approve the reformation action, not to authorize distributions to Nancy. In fact, there was only one distribution request pending during Smith's nomination—the request for the one-third interest made in March 2000. The request for increased monthly distributions to cover the life insurance policy was not made until September 19, 2001, after Smith had been appointed. Smith's eventual acquiescence, together with the institutional trustee, in Nancy's requests is simply not evidence of a pre-arranged collusion that Nancy failed to disclose. Without deception, there is no right of action for fraud. *Donovan v. Towle,* 99 Vt. 464, 470 (1926).[22]

Because they have failed to establish at least two essential elements,[23] Defendants are not entitled to summary judgment on their claim of fraud against Nancy. Consequently, without establishing fraud, they cannot impose liability on Seth and Cornelia as transferees of the property received by fraud. **Summary Judgment is GRANTED IN FAVOR OF THE PLAINTIFFS as to the allegations of Count 7.**[24]

After careful review of the pleadings, undisputed facts, and supporting exhibits, the Court concludes that Defendants have failed to present evidence to satisfy their burden of proof on any of the claims in Counts One, Two, Three, Four and Seven of the counterclaim. Without establishing any of their substantive claims, Defendants are not entitled to the attorneys' fees they request in Count Five. Therefore **SUMMARY JUDGMENT IS GRANTED FOR THE PLAINTIFFS and DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IS DENIED.**

---

[22] The failure to prove damages is likewise fatal to a fraud claim. *Smith v. Country Village Intern., Inc.*, 2007 VT 132, ¶ 10, 183 Vt. 535. Here, Defendants must prove amount of money they actually lost as a result of the alleged fraud. *Smith v. Country Village Intern., Inc.* 2007 VT 132, ¶ 10. In this discretionary Trust, Defendants are not guaranteed any particular sum of money. In fact, they may not get any at all since the trustees have authority to distribute the entire principal to one beneficiary at the exclusion of others. Thus, Defendants cannot establish that these distributions to Nancy directly caused them actual loss.

[23] It is also not clear that Defendants relied on the alleged misrepresentation. Todd's refusal to assent to Smith's appointment is a strong indicator that he did not accept what he had been told regarding Smith. In addition, because of the mistrust Defendants felt toward Nancy, there may have been some duty on Defendants' part to investigate the propriety of appointing Smith, which they apparently did not do. See *Lewis v. Cohen*, 157 Vt. 564, 569 (1991) (The duty to investigate arises where "it is clear from the . . . facts about the relationship of the parties that reliance should only follow an independent inquiry.").

[24] Defendants' claim in Count 7 that Nancy fraudulently conveyed assets to Seth and Cornelia as defined in 9 V.S.A. § 2288 (1)(a) is also dismissed. Defendants have not established that they are a creditor as defined under that statute (i.e. a person with a right to payment from the "debtor.") 9 V.S.A. §§ 2285 (3)–(5). Nor have they produced evidence of actual intent to defraud as defined in 9 V.S.A. § 2288(1)(a). Therefore, summary judgment is granted for the Plaintiffs on the entirety of Count 7.

Dated this _____ day of March, 2010 at Bennington, Vermont.


                                            _____

                                            John P. Wesley
                                            Presiding Judge